HARTFORD-CONNECTICUT TRUST COMPANY *vs.* PURITAN LAUNDRY, INCORPORATED, ET ALS.

First Judicial District, Hartford, May Term, 1920.

PRENTICE, C. J., WHEELER, BEACH, GAGER and CASE, Js.

A "particular description" of personal property mortgaged (General Statutes, § 5206) is essential to protect it from the claims of bona fide purchasers and attaching creditors; but a general description, such as "all machinery, tools and equipment located" on certain described premises and "used in connection with the laundry business conducted by the grantor," is sufficient as between the parties.

The rule as to the effect of the retention of possession by the vendor or mortgagor of personal property, never was applied, nor was it intended to apply, so as to affect the rights of the original parties as between themselves. All of our decisions upon this subject rest upon the assumption of a contract valid not only between the parties but as to all others except creditors and bona fide purchasers.

A conditional sale of chattels which had theretofore been mortgaged to the plaintiff, was made by the mortgagor, the vendee taking possession of the property and agreeing to assume and pay off the mortgage debt to the mortgagee in instalments, as part of the purchase price. *Held* that upon a foreclosure of its mortgage by the plaintiff, the conditional vendee was estopped by its undertaking from asserting that it was a bona fide purchaser with full right to challenge the validity of the mortgage because of the indefiniteness or uncertainty in the description of the mortgaged property; and that to permit it to retain the property and at the same time to repudiate its obligation to pay for it—expressly set forth in the very contract under which it derived its title—would work a manifest fraud upon both the mortgagor and mortgagee.

While in its possession, the conditional vendee attached the property in a suit brought by it against its vendor, for an alleged breach of the latter's independent and collateral promise to set up and install the machinery in the vendee's laundry in good condition and running order, and by virtue of such attachment it now claimed a priority over the plaintiff's mortgage. *Held* that by such attachment the conditional vendee, under the guise of claiming to be a creditor of the vendor, now found to be insolvent, was seeking to appropriate the property in violation of its express promise, a result which even our somewhat rigorous law in favor of attaching creditors would not sanction or permit.

An assignment of error to the effect that the trial court erred in rendering judgment for the plaintiff, is not that "specific statement" required by the statute (§ 5837) in order to entitle it to consideration by this court.

Argued May 11th—decided July 20th, 1920.

SUIT to foreclose a chattel mortgage, brought to and tried by the City Court of Hartford, *Bullard, J.;* facts found and judgment rendered for the plaintiff, from which the defendant Pratt Laundry Company appealed. *No error.*

This is an action to foreclose a mortgage of personal property. The defense of the Pratt Laundry Company

of Hartford, hereinafter called the Pratt Company, is that an attachment made by it on the property mortgaged, in an action against the mortgagor, the defendant Puritan Laundry Company, hereinafter called the Puritan Company, subsequent to the mortgage, has priority over the mortgage.

It appears that on October 30th, 1916, the Puritan Company executed and delivered to the Hartford Trust Company a mortgage of personal property to secure the sum of about $7,000. After the bringing of the action the Hartford Trust Company merged with the Connecticut Trust and Safe Deposit Company, forming a new corporation bearing the name of the Hartford-Connecticut Trust Company, which became entitled to the mortgage in suit, and the mortgagee is hereinafter referred to as the Trust Company.

The property, so far as is involved in this appeal, was not otherwise described than as "all machinery, tools and equipment of every kind and nature on the premises known as No. 10 Clinton Street, Hartford"; also as "all machinery, tools and equipment located on said premises used in connection with the laundry business conducted by the grantor." Number ten Clinton Street was the place of business of the mortgagor, the Puritan Company. This mortgage was duly recorded on the land records of Hartford. The property mortgaged remained in the possession of the Puritan Company.

On April 4th, 1918, the Pratt Company, desiring to purchase and use in its laundry business, conducted at 147 Sheldon Street in Hartford, the machinery, tools, implements and equipment described in the mortgage to the Trust Company, then in the possession of the Puritan Company, entered into an agreement with the latter in the form of a lease, but in fact a conditional sale and so recognized by the parties, by which

the Puritan Company was to deliver to the Pratt Company the personal property described in the mortgage to the Trust Company. Certain articles mentioned in the mortgage and conditional sale are not involved in this action, and this statement is to be taken, for brevity, as referring only to such property as was covered by the mortgage and attached by the Pratt Company, as hereinafter set out. The so-called lease contained the following agreements, which are printed in the footnote.* This agreement

---

* "Said machinery is subject to a mortgage to The Hartford Trust Company for the sum of Seven Thousand (7000) dollars, which, in addition to the payments to be made to the said party of the first part by the said party of the second as herein contemplated, said party of the second part hereby assumes and agrees to pay, as part consideration hereof, the weekly rent of Fifty (50) dollars during the first year of said term, and Forty (40) dollars through each remaining year of said term, whereof Twenty-five (25) dollars shall be paid on each and every week hereafter to the Hartford Trust Company, as in said agreement stipulated, and during the first year the remaining Twenty-five (25) dollars of each weekly installment shall be paid to said party of the first part and after the first year the sum of Fifteen (15) dollars of each weekly installment shall be paid to the said party of the first part, said payments to be made without demand on Saturday of each week next thereafter, whereof the first payment is to be made one week after said machinery has been installed and in operation.

" And it is further agreed that if said payments shall be promptly and fully paid to said The Hartford Trust Company, and to the party of the first part, as hereinbefore contemplated, whenever the payments shall amount to the sum of Ten Thousand Six Hundred (10,600) dollars, with interest on said sum, or on so much thereof as shall from time to time remain unpaid, said interest payments to commence one year after the date hereof, at the rate of six per cent per annum, then said property shall belong to said party of the second part, and in consideration thereof, the said party of the second part agrees to use said property carefully and not to underlet, sell, or assign any interest in said property.

"And if default at any time be made in the payments of rent as aforesaid, within thirty days after the same become due, or if any of the agreements hereof be violated, then this lease shall become void and said party of the second part shall, without notice, forthwith return said property in good condition, ordinary wear, only excepted, to the said party of the first part, its successors or assigns, or representatives, as it may direct, or its representatives, or agents may, at any time, with

of conditional sale does not appear to have been recorded.

Contemporaneous with the making of the conditional sale, certain collateral agreements were made by the Puritan Company, the only one of consequence in this action being an agreement of the Puritan Company that it would install the machinery at the Pratt Company's laundry and put the same in good working order, without expense to the Pratt Company, and that payments under the lease should not begin until one week after such installation should be completed. Pursuant to the contract of conditional sale, the personal property involved in this action was removed from the premises of the Puritan Company to the premises and plant of the Pratt Company, and the Pratt Company retained possession of the property until the attachment hereinafter referred to.

Neither the Pratt Company nor the Puritan Company have ever paid the Trust Company anything on the mortgage since the execution of the conditional bill of sale, April 4th, 1918.

On or about July 2d, 1918, the defendant Pratt Company, through its attorney, wrote the Puritan Company as follows:—

"Calling your attention to the contract relative to the setting up of the machinery, you will note that the

or without process of law, take actual possession thereof, and for that purpose or to search for the same, may enter any premises of the party of the second part or to which it has access, showing such force as may be necessary and said party of the second part hereby waives any right of action for proceedings or damage therefor and agrees to pay all costs, expenses and fees of every kind, included and in case of the forfeiture of this lease as aforesaid, if default in payment of rent or otherwise, all money having been paid shall be retained by and belong to said party of the first part, provided, however, that said party of the first part, its agents, assigns or representatives may at their option elect to confirm this bill of sale, and sue for and recover any amount due thereon with interest and costs."

Puritan Laundry Co. agreed forthwith to set up and install the machinery and place the same in good condition, repair and running order free of expense and charge to the Pratt Laundry Co. This has not been done, although the contract was dated on April 4th.

"I am instructed to say to you that under the conditions, the Pratt Laundry Co. will not accept the property on account of the failure to carry out the contracts and that all property that has been actually delivered is hereby tendered to the Puritan Laundry Co., and charges therefor will be made for storage if the same is not returned.

"The Pratt Laundry Co. has also suffered great loss and expense in consequence of the failure of the Puritan Laundry Co. to fulfill its agreement, items of which will be hereafter presented to it.

"I also understand in this connection that the Puritan Laundry Co. has received the insurance for damage done to the machinery at this plant.

"I trust to hear from you immediately in this matter as the property will not be accepted under any conditions and that provision ought to be made for its removal."

On or about February 24th, 1919, the Pratt Company brought a civil action against the defendant Puritan Company, claiming damages on account of the Puritan Company's alleged failure to carry out its collateral agreements, which action was returnable to the Superior Court in Hartford County on the first Tuesday of April, 1919, by a lawful writ of attachment issued and dated on February 24th, 1919, directing the officer to attach the goods or estate of said defendant. Under and by virtue of said writ of attachment, the defendant Charles E. Lord, a deputy sheriff for Hartford County, attached all of the goods, chattels and machinery which had been delivered by the Puritan Company at the plant of the Pratt Laundry Company;

and said Lord, or his duly-appointed keeper or keepers, have lawful possession of said attached property, which attachment is still in full force and effect.

The Puritan Company was indebted to the plaintiff, at the time of the trial and on the date of the judgment in this action, in the principal amount of $4,075.

The court held that the mortgage of the Trust Company was valid as to the Pratt Company, and had priority over the Pratt Company's attachment, and rendered judgment accordingly. The defendant Pratt Company appealed for the following reasons:—

"That the court erred in not holding, upon the facts found, that the defendant was entitled to judgment.

"That the court erred in holding that all articles enumerated in plaintiff's Exhibit A, excepting, however, one Ford delivery, with red body and top, one four pocket wheel and one garment press, were articles covered by and included within the granting clause of the plaintiff's mortgage.

"That the court erred in holding 'that the Pratt Laundry Company's position is similar to that of a purchaser which not only had full knowledge of the mortgage and the specific articles mortgaged, but also had agreed to take the articles mortgaged subject to such mortgage.'

"That the court erred in holding 'that the rule of law that a mortgage of chattels, the possession of which is retained by the mortgagor, is prima facie fraudulent and void, as against the creditors and bona fide purchasers, cannot be invoked in favor of one occupying the position of The Pratt Laundry Company.'

"That the court erred in holding that the mortgage was valid as against, and had priority over the claim of The Pratt Laundry Company.

"That the court erred in rendering judgment as on file upon the facts detailed in the finding."

*Henry J. Marks,* for the appellant (defendant Pratt Laundry Company).

*Ralph O. Wells,* for the appellee (plaintiff).

GAGER, J.   Under our statute authorizing retention of possession by a mortgagor of personal property of the several kinds described in the statute, and to which property in question belongs, it is required that the the mortgage shall contain "a particular description of such personal property." General Statutes, § 5206. The description in the mortgage in this action was "all machinery, tools and equipment located on said premises used in connection with the laundry business conducted by the grantor." The trial court held that this was too general and indefinite a description to secure the protection of the chattel mortgage as against attaching creditors and bona fide purchasers. This ruling is justified by *Gaylor* v. *Harding*, 37 Conn. 508, and *Herman* v. *Deming*, 44 Conn. 124, and is not in fact questioned by the plaintiff. While, therefore, this question is not before us, reference must be made to it because the questions presented are based primarily upon the assumption that this ruling was correct, and that the plaintiff stands in no other position than it would be in if the statute were not in existence.

The appellant claims that the mortgage as to the tools, machinery and equipment involved in this appeal, by reason of the generality of its description, is invalid as between the mortgagor and the mortgagee. Directly the contrary was held by the court in *Gaylor* v. *Harding, supra,* a case, up to a certain point, indistinguishable from the present. We quote from page 516 as follows: "None of the property in dispute is particularly described in the mortgage deed, nor enumerated in the schedule thereto attached. The deed was, however, duly recorded, and general words of descrip-

tion are used which, as between the parties, would embrace and convey all the machinery. After a description of the real estate the deed goes on to say, 'together with all the machinery, tools and implements contained in said buildings; also all machinery, tools and implements which may from time to time be added to or substituted for those now in use upon said premises and in said building.'" This is, also, the general rule as between the parties. 11 Corpus Juris, p. 456, § 78. Neither did retention of possession of the mortgaged personalty make the mortgage invalid as between the parties. The doctrine of the effect of retention of possession by the vendor or mortgagor of personal property, never was applied, or intended to be applied, so as to render a sale or a mortgage of personal property, otherwise valid, invalid as between the parties. The doctrine is solely for the protection of attaching creditors and bona fide purchasers. In all our cases where it is said that retention of possession renders a sale or mortgage void, this result is always affirmed with reference to the rights of such creditors or purchasers, and never as to the rights of the original parties as between themselves. All the discussions are based upon the assumption of a contract good between the parties and as to all others except creditors and bona fide purchasers. *Gaylor* v. *Harding,* 37 Conn. 508; *Price* v. *Heubler,* 63 Conn. 374, 28 Atl. 524; *Swift* v. *Thompson,* 9 Conn. 63; and this principle is recognized and applied in *Sanford* v. *DeForest,* 85 Conn. 694, 84 Atl. 111. See also *Patten* v. *Smith,* 5 Conn. 196.

Did the case of the defendant Pratt Company rest upon a priority claimed by reason of an attachment of the mortgaged personal property while it was still in the hands of the mortgagor and nothing more, it may be conceded that the claimed priority over the mortgagee would be made out. But the Pratt Com-

pany's situation is controlled by quite other factors than those so far referred to. It appears from the statement of facts that about six months after the mortgage was given by the Puritan Company, the Pratt Company, desiring to purchase the mortgaged property from the Puritan Company, mortgagor, and to remove the property to its own place of business, entered into a contract of conditional sale with the Puritan Company by which the Puritan Company agreed to sell the property to the Pratt Company, title to pass to the Pratt Company when payments had been made in the manner provided in the contract to the amount of $10,600 with interest thereon. While the contract was in form one of renting and hiring, it was rightly regarded by the parties as a conditional sale. *In re Wilcox & Howe Co.*, 70 Conn. 220, 228, 39 Atl. 163; *Hine* v. *Roberts*, 48 Conn. 267. The Puritan Company, apparently desiring to protect the Trust Company, mortgagee, and also to protect itself from liability to the Trust Company as maker of the notes secured by the mortgage, before executing the contract of conditional sale notified the defendant Pratt Company of the facts as to the mortgage, with the result that the following clause was made part of the contract of conditional sale, to wit: "Said machinery is subject to a mortgage to the Hartford Trust Company for the sum of $7,000, which, in addition to the payments to be made to the said party of the first part [The Puritan Company], by the said party of the second part [The Pratt Company] as herein contemplated, said party of the second part hereby assumes and agrees to pay, as part consideration hereof." The contract then specifically provides for the payment of a portion of the so-called weekly rent to the Trust Company on account of the mortgage debt referred to. Under this contract the Pratt Company became a purchaser of the

property, conditional of course, not only with full notice of the plaintiff's interest therein and therefore not as a bona fide purchaser, but as a purchaser undertaking by this express contract to assume and pay the Trust Company's claim as part of the purchase price of the property involved in the transaction. By undertaking this obligation the Pratt Company not only undertook to pay the plaintiff, but by so doing to pay and discharge the obligation of the Puritan Company evidenced by the mortgage, and therefore made the contract immediately and directly for the benefit and advantage of the Puritan Company as a method of discharging the secured debt of the Puritan Company to the plaintiff. After this undertaking and delivery of this property under this contract, the Pratt Company cannot be heard to say that it is not bound by the terms of this agreement. The Pratt Company is not a purchaser in good faith. Neither lack of particularity in the description, nor retention of possession by the Puritan Company, have caused or permitted any fraud upon the Pratt Company considered as a purchaser, and to allow its present claim would enable it to work a fraud upon both the Puritan Company and the plaintiff. Such allowance would enable the Pratt Company to take and hold possession of the property at the same time that it repudiated its express obligation to pay, made in the very contract under which it holds. We think the Pratt Company as purchaser is by its contract clearly estopped from disputing the validity of this mortgage.

But the Pratt Company says that the rule as to bona fide purchasers does not apply,—that its claim is based upon its rights as an attaching creditor, and that the fact of notice does not defeat the right of an attaching creditor. We may admit that under our law the mere fact of notice does not, under ordinary cir-

cumstances, affect the rights of an attaching creditor. *Swift* v. *Thompson*, 9 Conn. 63. The situation of an attaching creditor and that of a bona fide purchaser differ materially. "In such cases there is a material distinction between purchasing property voluntarily and paying money therefor, and attaching it to secure a debt. Creditors ordinarily stand on as high ground as bona fide purchasers without notice." *Ives* v. *Stone*, 51 Conn. 446, 458. To determine whether the rule as to attaching creditors applies in this case, it is necessary to revert to the special facts found with reference to the attachment. The Pratt Company took possession of the property under the contract of conditional sale and held possession at the time it caused the attachment to be made. It appears that upon the same date as the conditional sale, April 4th, 1918, the Puritan Company made a separate contract with the Pratt Company, by which it agreed forthwith to set up and install said machinery in the Pratt Company's laundry and place the same in good condition, repair and running order, free from expense and charge to the Pratt Company; and it was further agreed that the instalment payments provided for in the contract of conditional sale should not begin until one week after the property was removed, installed and in running order. This contract was not incorporated in or referred to in any part of the contract of conditional sale, though it was made upon the same date and was collateral thereto. It was an independent contract to do certain work upon the property described in the conditional sale; otherwise it is difficult to see why it was neither incorporated nor referred to in the conditional sale. Certain other collateral contracts were made upon the same day which are not here material. On July 2d, 1918, the Pratt Company's attorney wrote the Puritan Company, complaining that certain articles had not been delivered,

and certain other articles delivered had not been set up pursuant to the collateral contract, and further notifying the Puritan Company that on account of failure to carry out the contract the Pratt Company would not accept the property delivered; that it tendered the property back; that it had suffered great loss in consequence of the failure to fulfil the agreement, and that the Pratt Company would not accept the property under any conditions. The Pratt Company in fact made no tender of the property back other than by the attorney's statement referred to above, and held possession and control of it in the premises of the Pratt Company until February 24th, 1919, when, by writ of attachment, it brought an action against the Puritan Company to recover damages on account of an alleged failure of the Puritan Company to carry out its agreements in connection with the sale. Under this writ the deputy sheriff attached all of said property then in possession of the Pratt Company, and took the same into his possession, and such attachment is still in force. So far as appears the action is still pending. It is upon this attachment that the Pratt Company claims priority over the plaintiff's mortgage. The court also found that the Puritan Company is wholly insolvent and that it is and will be unable to pay the notes secured by the mortgage. It does not appear that the conditional sale has ever been abrogated further than by the attorney's notice above referred to, and the action begun in February, 1919, is still pending. We must therefore regard the claimed breaches by the Puritan Company as still in litigation. The contract of conditional sale contained no provision authorizing its rescission or discharge by the Pratt Company, and for all that appears in the record this contract is still in force between the Pratt Company and the Puritan Company.

The question that emerges from these facts attending the attachment, seems to be this: may the Pratt Company, while holding possession of the property under the contract of conditional sale, avoid its express obligation to recognize, assume and pay the mortgage upon the property, by making an attachment of the same property in a suit based upon a claimed violation of the very contract under which it obtained possession of the property and is holding it at the time of the attachment? By the attachment the Pratt Company, under the guise of claiming to be a creditor, is seeking to appropriate the property against its express undertaking. We do not think that the purpose or spirit of our somewhat rigorous law in favor of attaching creditors, either requires or permits this to be done. The purpose of the law is to prevent fraud that may arise because the debtor is permitted to seem to have that which he does not have. The case of the Pratt Company is not the usual case of an attaching creditor having notice simply, but of a creditor under contract with its vendor, not only to recognize the prior rights of the mortgagee, but to assume and pay the mortgage in discharge of a liability of its vendor. What the Pratt Company really got from the Puritan Company was the equity of the Puritan Company in the property over and above the Trust Company's mortgage interest, by a contract in which it substituted itself for the Puritan Company as to the payment of the mortgage, and that was precisely its position at the time of the attachment. The Puritan Company, under the conditional sale, had a leviable interest at the time of the attachment, but this interest was, as to the Pratt Company, only the equity over the mortgage claimed, and was the bare legal title retained by it to secure payment of the purchase price,—the greater part of this price being the obligation of the Pratt Company to assume

and pay the mortgage. These special facts take the case out of the ordinary rule as to attaching creditors, and the Pratt Company, the attaching creditor, has no priority over the plaintiff mortgagee. To allow the claimed priority would be permitting a rule designed to prevent fraud to work a fraud.

The first and last reasons of appeal are, in substance, that the court erred in rendering judgment for the plaintiff. This is not the specific statement of error required under § 5837 of the statute relating to appeals. *Avery* v. *Ginsberg*, 92 Conn. 208, 102 Atl. 589. All the specific claims of error in the reasons of appeal are considered in the foregoing opinion.

There is no error.

In this opinion the other judges concurred.