## H. G. CRAIG AND COMPANY, LTD., ET AL. *vs.* THE UNCAS PAPERBOARD COMPANY.

Second Judicial District, Norwich, April Term, 1926.

WHEELER, C. J., CURTIS, MALTBIE, HAINES and HINMAN, Js.

A contract in the form of a lease which recites that the "lessor" has "leased" to the "lessee" certain personal property for a designated period in consideration of the latter's promise to pay a stipulated rental, and which further provides that, upon the nonpayment of any instalment, the "lessor" shall have the privilege of repossessing himself of the property, and that at the expiration of the term of the "lease," the "lessee" shall have the option to purchase at a nominal sum, is in substance and reality a contract of conditional sale despite the name and style given to it by the parties, and if, as in the present case, it be not acknowledged as required by the statute relating to such contracts, it will be held to be an absolute sale except as between the parties and their personal representatives.

The receiver of a conditional vendee is not its "personal representative" within the meaning of that term as used in § 4746 of the General Statutes.

In the absence of evidence to the contrary, it is presumed that the

parties to a contract intended that its validity and construction should be governed by the law of the State where it is to be performed or is to have its beneficial operation and effect, rather than by the law of the State in which it is made.

Each of the three so-called "leases" in the present case, which were valid under the law of Pennsylvania, contained a clause that "this contract is made in the State of Pennsylvania and shall be executed in accordance with the laws of said State." *Held* that this clause referred solely to the place where the contracts were signed, executed and delivered, and did not rebut the presumption that the law of Connecticut, as the State of their beneficial operation and effect, was intended to control the legal relations arising out of them; and that this conclusion rendered unnecessary a consideration of whether the same result might not also be reached upon grounds of public policy in order to protect the rights of the Connecticut receiver of the "lessee."

The recording of an unacknowledged conditional bill of sale does not charge creditors of the conditional vendee with notice of its existence.

Argued April 27th—decided June 9th, 1926.

PETITION by a creditor in receivership proceedings to reclaim certain machinery and equipment, brought to the Superior Court in New London County and tried to the court, *Wolfe, J.;* judgment rendered for the respondent, and appeal by the petitioner. *No error.*

*Edmund W. Perkins,* for the appellant (the petitioner).

*Arthur T. Keefe,* for the appellee (the respondent).

HINMAN, J. From the admitted allegations of the petition and answer, constituting the facts upon which the matter was heard and determined by the trial court, it appears that the petitioner, a Pennsylvania corporation located in that State, and the Uncas Paperboard Company (hereinafter referred to as the Board Company), as the contracting parties, executed and delivered three instruments, Exhibits A, B and C, made part of the petition. These related, with the

exception of one duplex cutter, to parts of a paper-making machine owned by the Board Company and located in its mill in Norwich, which parts, upon being furnished by the petitioner, were attached to and incorporated in the paper-making machine. Exhibit A, which is dated March 5th, 1923, sets forth that the petitioner, called therein the lessor, "leases" to the Board Company, called the lessee, "addition to wet end and dryers—#2 Machine," also the cutter above mentioned, for the term of three hundred and seventy days at a "rental or hire" of $41,000, payable in twelve instalments, $4,100 on signing of contract, $4,100 when machinery is delivered at mill and set up ready to run, $3,280 thirty days after second payment, and a like sum on the corresponding date of each succeeding month "until the whole is paid for." Then follow covenants not inappropriate to a lease, including one to "promptly pay said rent without demand as each and every installment becomes due," and "at the termination of this lease, to surrender and deliver the same to the lessor in good condition, ordinary wear and tear excepted." But then follows a further agreement: "That if lessee make default in the payment of any installment of rent, or in the performance of any of the above covenants, or become insolvent, or make an assignment for the benefit of creditors, or be adjudged a bankrupt, then and in such event the entire rental for the full term of this lease shall immediately become due and payable and the lessor may enter lessee's premises, without let or hindrance, and forthwith remove said machinery without process of law and retain all rent then paid and recover all unpaid rent then accrued, with cost of such removal, including transportation, handling, and reasonable attorney's fee, together with damages for injury and depreciation." Also the following: "And the lessor

agrees that should the lessee perform all these covenants hereof without default, lessee may purchase said machinery after the expiration of this lease and the surrender of said machinery by paying lessor the sum of One ($1.00) Dollar; upon such payment, lessor shall by bill of sale convey said machinery to lessee."

Exhibit B, dated March 28th, 1923, is in form similar to Exhibit A, relates to twelve dryers, prescribes the term as four hundred and twenty days, and a total "rental or hire" of $11,500, payable in three instalments of $3,000 each and one of $2,500, one, two, three, and four months, respectively "after last installment March 5th, 1923 lease," and contains a similar provision for purchase by the "lessee" by paying $1.

Exhibit C, dated August 25th, 1924, covers two breaker rolls for Allen Mixers and two beater rolls for Marx Beaters, specifies the term as six months from date, and the "rental" as $4,900, payable in one instalment "four months after machinery is ready to deliver."

None of these instruments were acknowledged, but Exhibit A was filed with the town clerk of Norwich March 24th, 1923, Exhibit B May 17th, 1923, and Exhibit C on September 3d, 1924.

The machinery was installed in the Board Company's mill, and up to March 16th, 1925, the company had paid the petitioner $25,223.30 pursuant to Exhibits A, B and C, which instruments were in full force and effect on that date, when the receiver was appointed and took possession of the plant, including the machinery in question.

The trial court held that the instruments in question, although styled leases, are in legal effect conditional bills of sale, and that, because they are not acknowledged as required by our statute (and the

petitioner did not enter upon the premises of the Board Company for the purpose of taking possession of the machinery, and at the time of the appointment of the receiver all the property was under attachment at the instance of a creditor) the machinery in question should be held by the receiver as the absolute property of the Board Company so far as it may be needed by him for payment of debts.

Of the reasons of appeal, the eighth has no basis in a claim of law made in the trial court, so far as appears of record, and the eleventh was not pursued. All of the others relate to the overruling by the trial court of petitioner's claims of law, which claims may be grouped and generally stated as follows: (1) that the construction of Exhibit A, B and C is controlled by the law of Pennsylvania, under which they are leases or bailment contracts, creating the relation of bailor and bailee between the petitioner and the Board Company, and not contracts of conditional sale, and so not required by Connecticut law to be acknowledged; (2) that they are not contrary to any rule of public policy of Connecticut; (3) that the respondent receiver and the creditors of the Board Company had constructive notice of the instruments, hence the contracts are not, as to such creditors, to be held to be absolute sales, and (4) that the petitioner is entitled to the relief sought.

Regarding the claim that Exhibits A, B and C are to be construed as leases or contracts of bailment and not as conditional contracts of sale, it is too obvious to justify discussion that while they are, in form, contracts of renting or hiring, under each of them it was intended and provided that "the general property in the subject-matter of the contract is ultimately to pass, for an agreed price in money," from the petitioner to the Board Company on the performance by

the latter of certain specified conditions. "Where this is intended to be the effect, operation and main purpose of the contract, it will, as a rule, be held to be one of conditional sale, without much regard to the name or form the parties may give it." *In re Wilcox & Howe Co.,* 70 Conn. 220, 39 Atl. 163, and cases cited at page 228; *Hartford-Connecticut Trust Co.* v. *Puritan Laundry, Inc.,* 95 Conn. 172, 181, 111 Atl. 149.

If construed according to the settled law of Connecticut these instruments are, clearly, conditional contracts of sale. However, each contains a clause "that this contract is made in the State of Pennsylvania, and shall be executed in accordance with the laws of said State," and it is alleged in the petition and admitted by the answer that under the law of Pennsylvania "Exhibits A, B and C, are leases or bailment contracts, and create the relation of lessor-bailor and lessee-bailee," and the appellant claims that, in consequence, the instruments must be construed and treated as such. The appellant, in brief and argument, interprets the terms "executed" as employed in the contracts as referring only to signing and delivery, rather than performance, but contends that the word "made" should be construed as "governed." We are unable to adopt the latter contention; the only meaning of which "made" as here used is fairly susceptible is as relating to the place of signing and delivery and as thus fixing the *locus contractus* as being in Pennsylvania. 5 Words & Phrases, p. 4269. So if we accept the construction of "executed" claimed by the appellant—the party by whom the contracts were drawn—the result is that they contain nothing to rebut the legal presumption that they were made, so far as concerns the merits and rights involved, with reference to the place of their beneficial operation and effect, in which case the law of the latter place rather than the

*lex loci contractus* governs. *McLoughlin* v. *Shaw,* 95 Conn. 102, 111 Atl. 62, and cases cited at page 106. In *Beggs* v. *Bartels,* 73 Conn. 132, 46 Atl. 874, the situation was in all essential respects identical with the present case. A conditional sale of machinery was made in New York by the plaintiffs, Beggs & Company, to one Roberts, a resident of Connecticut, to be used by him in this State. The contract was valid in New York but, not being acknowledged, became an absolute sale in this State except between the parties or their personal representatives. Before Roberts had paid for the machinery it was attached and taken on execution by the defendants, creditors of Roberts. The purposes of the conditional contract of sale in that case were held (p. 134) to be: "to ultimately transfer, upon the payment of the purchase price as agreed, the title to the property in question from the plaintiffs to Roberts; to give the use of the property to Roberts in the meantime so long as he performed his covenants; to secure the plaintiffs against loss, by enabling them to retake the property upon Roberts' failure to pay his notes, and by preventing a sale of the property by Roberts to third parties, or a taking of it by attachment by his creditors. For the accomplishment of these purposes the parties intended that the property should be located in Connecticut. The agreement expressly provides that the boiler, engine, etc., shall be 'located, used and employed' by Roberts 'in his factory in the city of Stamford,' and that they shall not be removed from these premises without the written consent of the plaintiffs. The property was delivered upon the cars in New York to be transported to Connecticut. In pursuance of the terms of the agreement it was taken by Roberts to Stamford." All of these purposes are manifest in the contracts before us. While they contain no express provisions as to where

the machinery shall be located, they indicate, incontrovertibly, that it was to be erected, located and used in the Board Company's plant at Norwich.

In *Beggs* v. *Bartels, supra,* the court held that "while the formal execution of the contract was in New York, the principal acts necessary to effect its objects were by the terms of the contract to be performed in Connecticut. As affording the plaintiffs a security upon the property described, and as transferring to Roberts the apparent ownership of the property by giving him the possession, the right to use, and even the right to affix it to realty, and as granting to him the absolute title upon payment of the purchase price, the contract was intended to have its operation upon property situated in Connecticut. . . . As was said in *Chillingworth* v. *Eastern Tinware Co.,* [66 Conn. 306, 33 Atl. 1009] the contract was to have its 'beneficial operation and effect' here. The transaction was begun in New York, but was to be performed and completed here, and the parties must be held to have contracted with reference to the law of this State, and that law must govern." Equally, and for the same reasons, the law of Connecticut governs the rights of the parties to the case before us.

A further suggestion, confirmatory of this conclusion, is found in Williston on Sales, Vol. 1 (2d Ed.) § 339: "If a buyer purchases goods from a conditional vendee, the buyer's rights must be determined by the law of the place where he contracted, and where the goods were . at the time, not by the law of another State where the conditional buyer had originally obtained the goods. . . . The question involved is not the validity of the original conditional sale; . . . The essential question is, are the circumstances of the case such as to estop the original seller from asserting his title? The circum-

stances of estoppel exist in the second State and the question whether they are sufficient to make a transaction in that State effectual should, it seems, be determined by its own laws. . . . Another principle has been adopted in a number of courts in cases where goods are bought on conditional sale for immediate removal to another State, and the seller either ships the goods himself or is aware of the buyer's purpose. . . . The courts of the State to which the property is removed will apply its own rules, though the conditional sale was entered into in another State."

Our conclusion, upon the grounds above stated, renders it unnecessary to determine whether the rights given the receiver by Connecticut law might not also be sustained upon considerations of public policy. *Walp* v. *Mooar,* 76 Conn. 515, 518, 57 Atl. 277; *Maisch* v. *Maisch,* 87 Conn. 377, 381, 87 Atl. 729; *Boyer* v. *Knowlton Co.,* 85 Ohio St. 104, 97 N. E. 137, 38 L. R. A. (N. S.) 224; *Thompson* v. *Taylor,* 65 N. J. L. 107, 46 Atl. 567; *Marvin Safe Co.* v. *Norton,* 48 N. J. L. 410, 418, 7 Atl. 418; *Hervey* v. *R. I. Locomotive Works,* 93 U. S. 664.

So we hold that the contracts in question are, for all purposes of the present consideration at least, conditional contracts of sale, and that they are governed by the law of Connecticut as to their operation and effect as between the present parties, and we come, now, to determine the rights of these parties thereunder.

Since it is admitted that none of the contracts were "acknowledged before some competent authority," in conformity with § 4744 of the General Statutes as amended by § 1 of Chapter 116 of the Public Acts of 1921, it follows that, under §4746, the sales involved must be "held to be absolute sales, except as between the vendor and vendee or their personal representa-

tives,"—and the only way in which these sales can be other than absolute, as between the petitioner and the respondent receiver, is to hold the receiver to be the personal representative of the conditional vendee, instead of the representative of the creditors, as the trial court held him to be. The meaning and scope of the term "personal representatives" as used in the statute now § 4746, were thoroughly considered and definitely decided in *In re Wilcox & Howe Co., supra,* and there is no occasion here to do more than refer to the discussion contained in the opinion in that case. It was there held that as the property covered by the contracts was, as to the creditors of the Wilcox & Howe Company, the absolute property of the company, it was available to the creditors in payment of their claims and could have been appropriated for that purpose by attachment and levy of execution. "When it came into the hands of the receiver . . . the law sequestered it, on behalf of the creditors and for the benefit of all of them, as the absolute property of the corporation, just as fully and just as effectively as the creditors could have sequestered it by attachment and levy. For the purpose of making that sequestration effectual the receiver is the represenative of the creditors." *In re Wilcox & Howe Co., supra,* p. 233; *American Clay Machinery Co.* v. *New England Brick Co.,* 87 Conn. 369, 374, 87 Atl. 731.

The appellant necessarily concedes that *In re Wilcox & Howe Co.* is decisive as to this phase of the present case unless like effect be given to such constructive notice to creditors as was afforded by the filing of the contracts in the office of the town clerk, as was accorded to actual knowledge of a purchaser, in *Liquid Carbonic Co.* v. *Black,* 102 Conn. 390, 128 Atl. 514. It was there held (p. 395) that while "the effect of our conditional sale statute was to render contracts of

conditional sale defectively executed absolute sales as to creditors and bona fide purchasers," a purchaser of property with actual notice that it was subject to a conditional bill of sale and that a part of the purchase price remained unpaid, was not entitled to protection, based upon defective execution of the contract, as a bona fide purchaser. But there is no parallel or persuasive analogy between creditors who have extended credit to a conditional vendee under a defective contract of conditional sale and without actual notice, and the vendee from a vendee under a defective contract of which he had actual knowledge; the occasion for application of the equitable principle of estoppel preventing the latter from questioning the validity of the contract, in that to do so would give him an unconscionable advantage, does not obtain as to the former. And we do not think it consistent with the true meaning and purpose of the statute, nor necessary "in order to prevent 'injustice, oppression or an absurd consequence,'" to deprive innocent creditors of the protection which the statute intends and affords. The trial court's conclusion that the receiver was, as to the property here concerned, the representative of the creditors instead of the personal representative of the Board Company, was justified and correct.

There is no error.

In this opinion the other judges concurred.