## In re GLOVER SPECIALTIES CO.

(District Court, D. Connecticut. February 24, 1927.)

No. 7621.

1. **Bankruptcy** ⊚⟶140(½)—Golf clubs purchased from bankrupt, but returned for exchange for a new model, held to have become the property of bankrupt, and not subject to reclamation.

Petitioner purchased from bankrupt a number of golf clubs. Later it returned a number of them under an agreement that, when manufactured, it should receive a like number of clubs of a new model. The returned clubs were not marked or otherwise identified, but were mingled with other clubs of bankrupt. *Held* that, on their return they became the property of bankrupt, and could not be reclaimed by petitioner after the bankruptcy.

2. **Chattel mortgages** ⊚⟶92—Failure to record chattel mortgages does not affect validity as between the parties (Gen. St. Conn. 1918, § 5206).

Under Gen. St. Conn. 1918, § 5206, requiring chattel mortgages to be acknowledged and recorded, as construed by the Supreme Court of Errors of the state, failure to record does not affect the validity of a mortgage as between the parties.

3. **Bankruptcy** ⊚⟶165(1)—Taking possession of property by pledgee within four months' period, but pursuant to right given by pre-existing contract, held not voidable "preference" (Bankruptcy Act § 60b [Comp. St. § 9644]).

Under the law of Connecticut the taking possession of property by a pledgee pursuant to right given by a pre-existing contract is valid, and, where the contract was made more than four months prior to bankruptcy of pledgor, such taking possession during the four months period, and without intent to hinder or defraud creditors, does not constitute a preference voidable under Bankruptcy Act, § 60b (Comp. St. § 9644).

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Preference.]

In Bankruptcy. In the matter of the Glover Specialties Company, bankrupt. On review of order of referee. Reversed.

Arthur B. Weiss, of Bridgeport, Conn., for trustee.

W. Parker Seeley, of Bridgeport, Conn., for petitioners King and Williams.

Fredk. Schmertz, of New York City, and George Sterner, of Philadelphia, Pa., for petitioner Wanamaker.

THOMAS, District Judge. On August 19, 1925, an involuntary petition was filed against the Glover Specialties Company, and it was subsequently adjudicated a bankrupt. It was a Connecticut corporation, which had been engaged in the manufacture of golf clubs under the direction of one Read. The petitioner John Wanamaker, New York, a New York corporation, was one of the customers of the bankrupt and had had considerable dealings with it. The petitioners King and Williams were interested to some extent in financing the bankrupt, and in the early part of 1925 advanced approximately $1,200 to it, and in addition guaranteed the bankrupt's account with A. G. Spaulding & Bros., manufacturers of athletic equipment. In the early part of 1925, Read and a representative of John Wanamaker, New York, entered into an arrangement for the return of 440 golf clubs which had been purchased by the latter. It appeared that the bankrupt was, at that time, about to manufacture a new model club, and that Wanamaker desired to exchange the 440 clubs of the old model for a like number of clubs of the new model. It was understood at the time of the arrangement that the bankrupt would be able to dispose of the returned clubs among its various customers, and there was a provision that it should account to Wanamaker for the proceeds of the sales.

Only about three dozen of the new model clubs were ever furnished to Wanamaker. Subsequently 100 of the old model clubs were returned to Wanamaker on demand, and the title to these is not in question here. The 440 clubs were not tagged or otherwise identified as the property of Wanamaker, but were mingled with other clubs and equipment in the stock of the bankrupt.

In April, 1925, prior to the bankruptcy, the bankrupt entered into an agreement with King and Williams which was as follows:

"Memorandum of agreement, made this ——— day of April, 1925, by and between Glover Specialties Company, Inc., a Connecticut corporation with a principal office in the city of Bridgeport, party of the first part, Linus G. Read, of said Bridgeport, party of the second part, and Harry O. King, of Fairfield, Connecticut, and Jarvis Williams, Jr., of said Bridgeport, parties of the third part, witnesseth that:

"1. In consideration of the loan of $——— by the parties of the third part to Glover Specialties Company, Inc., evidenced by its promissory note of this date and the guaranty of its future account with A. G. Spaulding & Brothers, Glover Specialties Company, Inc., agrees and hereby does assign, set over, and transfer to said parties of the third part all accounts receivable as shown by its books as of this date (see Schedule A), all of its inventory as of this date (see

Schedule B), and all unfilled orders as of this date (see Schedule C), together with all its right, title, and interest in and to a certain patent, No. 1,524,488, granted January 27, 1925, to said Linus G. Read, for a golf club, the application for which was filed August 16, 1923, serial No. 657,650, all as collateral security for the payment of said note and to indemnify the parties of the third part against any loss which they may sustain by reason of their guaranty of the account of said Glover Specialties Company, Inc., with A. G. Spaulding & Brothers.

"2. As a further inducement to said parties of the third part to loan said sum of money and to guarantee said account, Linus G. Read hereby assigns to Jonathan Grout, of said Bridgeport, in trust, for the benefit of the parties of the third part and himself, the said Linus G. Read, 498 shares of the capital stock of Glover Specialties Company, Inc.

"In Witness Whereof, the parties have hereunto set their hands the day and year first above written.

"Glover Specialties Company, Inc.,
          "By L. G. Read, Its President.
    "L. G. Read."

Attached to this agreement was a schedule of the inventory, in which were included the golf clubs returned by Wanamaker. Possession of these clubs was not, at that time, transferred to King and Williams, nor was the agreement ever recorded. On August 14, 1925, five days prior to the filing of the involuntary petition, King and Williams took possession of the assets of the bankrupt, including 340 of the golf clubs returned by Wanamaker.

The question involved here is whether King and Williams, Wanamaker, or the trustee has title to these 340 clubs. An agreement was entered into between the parties whereby the clubs were sold and converted into cash—disposition of the fund to depend upon the final decision as to who was entitled to the clubs. The referee decided in favor of the trustee, holding that the transaction between Wanamaker and the bankrupt was a resale, and that King and Williams could not take advantage of the secret agreement with the bankrupt. Both losing parties petitioned this court to review the decision of the referee.

[1] The claim of Wanamaker was properly disposed of by the referee. All the circumstances indicate that there was no intention on the part of Wanamaker to control the disposition of the clubs returned, nor was the bankrupt to account for the proceeds. The clubs were not tagged or otherwise marked, so as to distinguish them from other property of the bankrupt. Whether the transaction be called a resale or an exchange is immaterial. The fact is that Wanamaker retained no interest in the clubs themselves which would warrant a decision that the title to the clubs was in Wanamaker. Nor is there any basis for finding a constructive trust in favor of Wanamaker arising through any fraud of Read, who acted for the bankrupt—there being no evidence of any fraud on his part, or any indication that he obtained possession of the clubs from Wanamaker by any misrepresentation. There is nothing in the evidence to show that, at the time Wanamaker returned the clubs, Read did not intend to carry out his promise to deliver new model clubs.

The claim of King and Williams, however, is not so easily disposed of. At the time the petition was filed they were in possession of the clubs, having taken them a short time before. The clubs were not returned to the trustee, but an agreement was entered into whereby the court should determine the question of title to the clubs. It apparently was not intended by the parties that their rights should be in any way prejudiced by this agreement. The issues are therefore to be determined as of the date of the filing of the petition in bankruptcy.

[2] It is contended by the trustee that the instrument executed by Read, assigning the clubs, among other things, to King and Williams, is void, because it did not conform to the laws of the state of Connecticut respecting chattel mortgages, in that it is not properly executed, acknowledged, or recorded in accordance with the provisions of Gen. Stat. 1918, § 5206. Assuming for the present that this document is a chattel mortgage, these considerations would not affect its validity as between the parties. Hartford-Connecticut Trust Co. v. Puritan Laundry, Inc., 95 Conn. 172, 180, 111 A. 149; Gaylor v. Harding, 37 Conn. 508; Price v. Heubler, 63 Conn. 374, 28 A. 524; Swift v. Thompson, 9 Conn. 63, 21 Am. Dec. 718; Sanford v. DeForest, 85 Conn. 694, 84 A. 111. However, the assignment to King and Williams does not have the characteristics of a chattel mortgage. It is rather a pledge, as it states that it is made "as collateral security for the payment of said note," etc. As such it was of no effect, unless possession of the personal property described therein should be transferred to the pledgees.

[3] The question in the present case, therefore, narrows down to a determination of whether the taking of possession by King and

Williams within four months of the bankruptcy constituted an illegal preference, which can be avoided by the trustee. The identical question arose in the case of Macdonald v. Aetna Indemnity Co., 90 Conn. 415, 97 A. 332. There the Niagara Company had pledged its stock more than four months before a petition in bankruptcy was filed against it. Within the four months period, the pledgee took possession of the property. The Supreme Court of Errors held that this did not constitute a preference. It further appears in the decision that the Connecticut law regarding the perfecting of a pledge by the taking of possession is in accord with the New York law under which that case was decided. On the principal question the Supreme Court of Errors, speaking by Mr. Justice Wheeler, said on page 424 (97 A. 335):

"The bank insists that, under the federal Bankruptcy Act, the seizure of possession by the Warehousing Company was a preference within that act, open to attack by any creditor of the bankrupt because the perfecting of the lien was within the four months period of the act, which makes transfers of property within such period under certain circumstances unlawful preferences. The validity of this lien is by the United States Supreme Court made to rest upon the local law of New York. The immediate question is whether the exercise of the right to take possession of the pledged property within the four months period constituted an illegal preference. Had the transfer been made upon a present consideration, with no intent to hinder or to defraud creditors, it could not be attacked as an illegal preference. Nor does it make it an illegal preference where the consideration was past and the transfer was made in perfecting a pre-existing agreement of pledge and within four months of bankruptcy, provided the transfer was valid under the local law and made with no intent to hinder or defraud creditors. The exercise of a pre-existing right, lawful in the local jurisdiction, although occurring within the prescribed period, is not an illegal preference unless made with intent to hinder or defraud creditors. The pledgee taking possession in pursuance of and in the enforcement of his pre-existing right is prima facie presumed to take in the belief in his right and not in the belief that his taking is with intent to give himself a preference. Thompson v. Fairbanks, 196 U. S. 516, 25 S. Ct. 306 [49 L. Ed. 577]; Humphrey v. Tatman, 198 U. S. 91, 94, 25 S. Ct. 567 [49 L. Ed. 956]; Sexton v. Kessler & Co., 225 U. S. 90, 98, 32 S. Ct. 657 [56 L. Ed. 995]; Sex-

ton v. Kessler & Co., 97 C. C. A. 161, 172 F. 535, 540 [40 L. R. A. (N. S.) 639]; In re Automobile Livery Service Co. [D. C.] 176 F. 792, 795; Dale v. Pattison, 234 U. S. 399, 34 S. Ct. 785 [58 L. Ed. 1370, 52 L. R. A. (N. S.) 754]; Taney v. Penn Bank, 232 U. S. 174, 34 S. Ct. 288 [58 L. Ed. 558]."

The cases cited by Mr. Justice Wheeler fully support the decision. In Thompson v. Fairbanks, supra, the bankrupt had executed a chattel mortgage several years prior to the bankruptcy. The mortgagee, however, had not taken possession until within the four months period. Under Vermont law, the instrument was good between the parties, but void as to bona fide purchasers and attaching creditors, unless there was a transfer of possession. The Supreme Court of the United States held that the taking of possession within the four months before any specific lien had been acquired by any of the bankrupt's creditors was not a preference which could be avoided by the trustee. In Sexton v. Kessler, also cited in the opinion of Mr. Justice Wheeler, securities were pledged, but the pledgee took possession within four months of the bankruptcy. It was there held that there was no preference; the pledge having been made prior to the four months period.

In view of these authoritative decisions, it must be held that King and Williams are entitled to the fund derived from the sale of the clubs in question, unless it appears that the assignment itself was a voidable preference. An examination of the record fails to disclose that such was the case. Under section 60b of the Bankruptcy Act (Comp. St. § 9644), to be voidable, a preference must have been made within four months and before the filing of the petition in bankruptcy, and the person receiving it shall then have reasonable cause to believe that the enforcement of such transfer would effect a preference. The burden of proving that the elements constituting a voidable preference exists is on the trustee Collier on Bankruptcy (10th Ed.) 827, and cases cited in the note. The instrument executed by Read bears no date, except that of the month of April. It is not clear, therefore, whether or not the transfer was within the four months period; the petition in bankruptcy having been filed August 19.

As the record stands, the order of the referee must be reversed, and the fund awarded to the petitioners King and Williams. Counsel may submit a decree in accordance with this decision.