**Dale ARFONS, Plaintiff-Appellant,**

v.

**E. I. DU PONT DE NEMOURS & COMPANY, Incorporated and The Ensign-Bickford Company, Defendants-Appellees.**

No. 35, Docket 24989.

United States Court of Appeals
Second Circuit.

Argued Oct. 21, 1958.

Decided Nov. 24, 1958.

Charles N. Segal, Hartford, Conn. (Arnold B. Elkind, New York City, Irwin R. Karassik, Herbert Zelenko, New York City, on the brief), for plaintiff-appellant.

Marsh, Day & Calhoun, Bridgeport, Conn. (Peter J. Nolan, Wilmington, Del., Norman K. Parsells, David S. Maclay, Bridgeport, Conn., on the brief), for defendant-appellee duPont.

Wallace W. Brown, Hartford, Conn., for defendant-appellee Ensign-Bickford.

Before SWAN and MOORE, Circuit Judges, and KAUFMAN, District Judge.

IRVING R. KAUFMAN, District Judge.

This action, based upon alleged breaches of express and implied warranties, was brought to recover for injuries allegedly sustained by appellant when working with dynamite produced by appellee duPont and fuse produced by appellee Ensign-Bickford. It is contended that appellees warranted through advertisement and literature that the products were safe for the purposes for which they were sold when used according to instructions.[1] The amended complaint failed to allege the place of the original or subsequent sales of the explosive and fuse or the place of injury.

It is clear, however, that the ultimate resale and the injury occurred in Ohio and that there was no privity of contract between plaintiff and either defendant. It has also been agreed that duPont obtained the fuse from Ensign-Bickford which does no business outside Connecticut. The appellees moved, pursuant to Rule 12(b) (6) Fed.R.Civ.P. 28 U.S.C.A. for a dismissal of the complaint for failure to state a claim upon which relief can be granted. The court below granted the motion on the ground that it was apparent from the face of the complaint that recovery against neither appellee was possible under Ohio or Connecticut law.

It is now well established that dismissals for mere technical defects or ambiguities in pleadings are not favored. Thus, we cannot affirm the granting of this motion if under any reasonable reading, the complaint states a claim upon which relief can be granted. Nagler v. Admiral Corp., 2 Cir., 1957, 248 F.2d 319; Virgin Islands Corp. v. W. A. Taylor & Co., 2 Cir., 1953, 202 F.2d 61; Dioguardi v. Durning, 2 Cir., 1944, 139 F.2d 774.

At this juncture of the case, it is conceivable that the plaintiff may be able to establish that the Connecticut choice of law rule would require us to look to the law of Ohio in determining the liability of either or both of the defendants. See H. G. Craig & Co. v. Uncas Paper Board Co., 1926, 104 Conn. 559,

---

1. Appellant's amended complaint also contained a claim based on negligence which was dismissed. However, appellant agrees that this count was barred by Connecticut's one year statute of limitations on negligence actions, and the negligence count is therefore not before us

133 A. 673; McLoughlin v. Shaw, 1920, 95 Conn. 102, 111 A. 62.

Assuming that appellant can demonstrate the applicability of Ohio law we turn now to the question of whether that law would permit recovery in the absence of privity. This leads us in turn to an examination of recent far-reaching changes in the Ohio law of warranties.

In Rogers v. Toni Home Permanent Co., 1958, 167 Ohio St. 244, 147 N.E. 2d 612, decided after Judge Smith's decision below, the Supreme Court of Ohio reassessed the requirement of privity in express warranty cases. After a searching inquiry into the history of the rule and the relevant policy considerations, the privity requirement was rejected as inconsistent with the true relationships between manufacturer and consumer created by modern advertising and merchandising methods.

█ The rationale of the Rogers case is clear. In recent years an increasing number of manufacturers have made their principal appeal directly to the ultimate purchaser through extensive and effective advertising. We know that a given article may pass through several hands after it leaves the factory and that the retailers or middle-men are mere "conduits * * * through which the manufacturer distributes his goods." Rogers v. Toni Home Permanent Co., supra, 147 N.E.2d at page 615. Thus, the consumer has come to rely more and more upon the representations and reputation of the manufacturer and less and less upon those of the retailer. This reliance is particularly justified where the articles are either sold in sealed containers or are otherwise of such a nature that no consumer could reasonably rely upon anyone but the manufacturer to detect or prevent latent defects.[2]

█ The Rogers case permits the consumer to look to the manufacturer to make good losses caused by defective products, where the sale or use of the product was induced by representations directed by the manufacturer to the consumer. In taking this forward step the Ohio court recognized that, in this modern society, laws which fitted the needs of other times must be adjusted to keep pace with society's growth and present needs. Clearly, the key relationship is one between producer and buyer. The retailer is in the unhappy position of being governed, in the selection of many products which he sells, by consumer pressure generated by manufacturer advertising. In addition the manufacturer is in the best position to minimize the possibility of latent defects.

We do not read the Rogers case as merely another step along a well traveled road. That decision blazed a new trail in Ohio and the court acknowledged as much in its opinion. We cannot at this point say that the Rogers case is limited to its particular facts and might not be extended to inherently dangerous merchandise.

It would be premature, also, before the facts are developed, for us to express an opinion as to what the law of Ohio may be in respect to implied warranties, nor are we called upon to do so. But see Markovich v. McKesson and Robbins, Inc., Ohio App.1958, 149 N.E.2d 181.

█ In light of the significant developments in Ohio law which were not before Judge Smith at the time of his decision we are compelled to reverse the dismissal of the complaint and remand the case.

Reversed.

2. We could hardly assume that the buyer of a brand name soap, for example, would expect the local druggist to chemically test each bar for purity.