Warren DAVIS, Trustee, Appellee,

v.

P. R. SALES COMPANY, Reclaimant-Appellant.

In the Matter of AMITY DYEING & FINISHING COMPANY, Inc., Bankrupt.

No. 329, Docket 27405.

United States Court of Appeals Second Circuit.

Argued April 24, 1962.

Decided June 22, 1962.

Leopold Frankel, Paterson, N. J. (Samuel Newfield, New York City, on the brief), for appellant.

David Haar, New York City, for appellee.

George A. Brooks, New York City (Walter S. Buehler, John J. Higgins, Robert H. Janover, New York City, on the brief), for General Motors Acceptance Corporation, *as amicus curiae*.

Before FRIENDLY, SMITH and MARSHALL, Circuit Judges.

J. JOSEPH SMITH, Circuit Judge.

This is an appeal from an order entered in the United States District Court for the Southern District of New York, by Hon. Frederick v.P. Bryan, D. J., affirming an order of the referee in bankruptcy which denied conditional vendor the right to reclaim the proceeds of the sale of machinery in the possession of the Trustee which machinery had been sold to the bankrupt pursuant to two contracts of conditional sale on the grounds that such contracts were void as against creditors.

The reclaimant, a partnership doing business as P. R. Sales Company with its principal office in Passaic, New Jersey, is engaged in the sale of machinery to the textile industry. Amity Corp., engaged in finishing and dyeing textiles, was adjudicated a bankrupt on January 28, 1960 in the Southern District of New York on a voluntary petition.

On July 25, 1957 and February 6, 1958, P. R. Sales Co. sold, under a conditional bill of sale, to Amity, the machinery sought to be reclaimed in the instant proceeding. The earlier contract provided that the purchase price of $4,600 was to be paid in the following manner: $500 on the execution of the contract; $500 on

delivery of the machine; and 18 promissory notes of $200, plus interest, payable monthly commencing one month after delivery. The second contract was for $14,000; $500 at the signing of the contract and 27 promissory notes of $500 each, plus interest, payable monthly commencing May 1, 1958. Both contracts provided that the machinery be kept by Amity at its Glendale, Queens plant unless permission of the vendor was obtained prior to any change in location. The certificate of incorporation of Amity at that time provided, and still does, that its principal place of business is in the County of Queens.

Sometime around June or July of 1959 Amity, with the permission of P. R. Sales Co. moved all of its property from Glendale to a new plant in Norwich, Connecticut, where it continued in business. On June 26, 1959 P. R. Sales Co. filed the original two conditional sales contracts with the Town Clerk of Norwich pursuant to the Connecticut conditional sales statute.[1]

Shortly thereafter Amity found itself in financial difficulty and was able to reach an agreement with P. R. under which P. R. returned all unpaid notes it held pursuant to both contracts in consideration for a new series of monthly notes dated August 1, 1959 which covered the combined balance still unpaid. Each note was for one half the total due under the old notes, plus interest, and the final note was due July 1, 1961, whereas the final note under the original contract was due July 1960. This agreement was not filed either in Connecticut or New York and no writing other than the notes was made. At the time of the adjudication in bankruptcy $9,936.50 was still unpaid. Reclaimant has sold the machinery by leave of the court, for $7,000 which it paid into the estate and now seeks repayment of, upon the theory that it had good title to said machines under the conditional sales contracts which were valid as to the Trustee.

The referee held that the residence of Amity was in Queens County, New York, as per its certificate of incorporation; that the extension constituted a new agreement; and that since no new contract was filed as required by Sec. 66–a of the New York Personal Property Law, McKinney's Consol Laws, c. 41 the vendor did not have a reservation of title valid as to creditors of the bankrupt.

Reclaimant-appellant filed a petition to review the order of the referee claiming that Connecticut law which was fully complied with should govern, and that if New York law is held to be the proper law the new arrangements did not constitute an addition which included other transactions within the purview of Sec. 66–a.[2] The District Court held:

"In this posture of the case it makes no difference in result wheth-

---

1. Conn.Gen.Stat., Sec. 42-77 (1958) (Repealed by 1959 P.A. 133, § 10-102, eff. October 1, 1961).

"Requirements for conditional sales contracts. Except as otherwise provided in this chapter, all contracts for the sale of personal property, conditioned that the title thereto shall remain in the vendor after delivery, shall be in writing, describing the property and all conditions of such sale, and shall be acknowledged before some competent authority and filed within a reasonable time in the town clerk's office in the town where the vendee resides; but the provisions of this section shall not apply to household furniture and appliances, musical instruments, phonographs, phonograph supplies, radios, television sets, combination sets of phonographs, radios or television, bicycles or property exempt from attachment and execution."

Conn.Gen.Stat., Sec. 42-79 (1958) (Repealed by 1959 P.A. 133, § 10-102, eff. Oct. 1, 1961).

"When sales held to be absolute. All conditional sales of personal property not made in conformity with the provisions of section 42-77 * * * shall be held to be absolute sales except as between the vendor and the vendee * * *."

2. New York Personal Property Law, § 66-a.

"Additions to conditional sales contract. No conditional sales contract once filed can have any additions made to it so as to include other purchases or transactions between the same parties. A new contract must be made and filed."

er New York law applies, as the referee held, or Connecticut law applies, as the reclaimants contend. In either event, the new agreement was required to be in writing and to be filed in order to protect the vendors' title against one in the position of the trustee. The new agreement was only partially reduced to writing and neither the text of the agreement nor any notice of it were filed anywhere."

We conclude that the law of Connecticut is controlling and filing of the new agreement was necessary in order to render the reservation of title valid as to creditors.

■■ The general rule with respect to a chattel sold pursuant to a valid conditional sale and subsequently removed to another state with the consent of the vendor is that the whole law, including the choice of law rules, of the second state determines the extent to which dealings in that state affect the interest of the conditional vendor. Restatement, Conflicts of Laws, §§ 269, 276. We think that Connecticut courts would follow the majority rule and apply their own law where the chattel is removed thereto with the consent of the conditional vendor (See Annotation, 13 A.L.R.2, 1312, 1333–36), particularly where after such removal the parties entered into a new agreement materially altering the terms of the original sale

■ Where goods are sold under a conditional bill of sale in New York to a Connecticut resident and it is contemplated at the time of sale that the situs of the property will be removed to Connecticut the substantive law of Connecticut determines the validity of the reservation with respect to third parties. The result reached by the Connecticut courts has been placed upon the principle that matters concerning performance of the contract are governed by the law of the place of performance "or beneficial operation." H. G. Craig & Co. Ltd. v. Uncas Paperboard Co., 104 Conn. 559, 133 A. 673 (1926); Beggs v. Bartels, 73 Conn.

132, 46 A. 874 (1900); Illustrated Postal Card & Novelty Co. v. Holt, 85 Conn. 140, 8 A. 1061 (1912); White v. Holly, 80 Conn. 438, 68 A. 997 (1908).

More significant, with respect to the instant case, is the fact that in one of the leading cases (Craig & Co. Ltd. v. Uncas Paperboard Co., supra) the court went on to say:

"A further suggestion, confirmatory of this conclusion, is found in Williston on Sales, Vol. 1 (2d Ed.) 339: 'If a buyer purchases goods from a conditional vendee, the buyer's rights must be determined by the law of the place where he contracted, and where the goods were at the time, not by the law of another State where the conditional buyer had originally obtained the goods. * * * The question involved is not the validity of the original conditional sale; * * *. The essential question is, are the circumstances of the case such as to estop the original seller from asserting his title? The circumstances of estoppel exist in the second State and the question whether they are sufficient to make a transaction in that State effectual should, it seems, be determined by its own laws. * * ' "

This language never has to our knowledge been disapproved, questioned, or limited.

■ The case at bar presents a complexity which arises out of the retention by Amity of its charter provision designating New York as its principal place of business. The recordation statute of Connecticut, Conn.Gen.Stat. § 42–77 (1958), in effect at the times here relevant, requires filing "in the town where the vendee resides", which is arguably in Queens County, New York. In any event it would seem contrary to the legislative policy to fail to apply the law of Connecticut with respect to the necessity of refiling, at least where the vendee has transferred his entire business to Connecticut, since the law was enacted for the benefit of "those who, in dealing with

another, may be led, by that other's possession and apparent ownership of personalty, to believe him to be its actual owner." Rhode Island Hospital National Bank of Providence v. Larson, 137 Conn. 541, 79 A.2d 182 (1951). Moreover, in the instant case the vendor has chosen to subject himself to that law not only by permitting the property to be transferred but by filing the original contract there as well.

■ Section 42–77 required that a contract of conditional sale which states "all conditions of such sale" be filed. This has been held to render invalid, as to third parties, a contract which failed to state precisely on what dates the installments were due. General Motors Acceptance Corporation v. Cirone, 146 Conn. 64, 147 A.2d 481 (1958); Rhode Island Hospital Nat. Bank v. Larson, supra; C. I. T. Corp. v. Meyers, 129 Conn. 514, 29 A.2d 758 (1942).[3] If a contract which is properly filed but fails to set forth the maturity date is void as to creditors it would appear to follow that an extension agreement would *ipso facto* require refiling. This conclusion is also supported by the rule that a "creditor of a conditional vendee who attaches his interest shall have the same rights as the vendee to tender to the vendor the performance of the contract" and therefore is entitled to be in a position to ascertain the terms of the agreement. Premium Commercial Corp. v. Kasprzycki, 129 Conn. 446, 450, 29 A.2d 610, 612 (1942).

In 1942, prior to the decision in Rhode Island, a lower court held that an extension agreement need not be refiled. General Motors Acceptance Corp. v. Golden, 11 Conn.Supp. 277 (1942). The court cited only Arthur v. G. W. Parsons Co., 224 F. 47, 51 (6 Cir. 1915), a case construing a similar Ohio statute. Golden

would seem to be out of line with the Connecticut courts' "steadily enforced * * * policy of strict compliance with all of the provisions of [the] statute." Brunswick-Balke-Collender Co. v. Thomas, 151 F.2d 892, 893 (2 Cir. 1945).

Be that as it may, the new arrangement in this case was more than a mere extension, for the new notes covered the combined balance remaining due on the two series of old notes, reduced the payments by one-half and extended the time of maturity by one year. Moreover, appellant returned the old series of notes to the debtor. All of which amply supports the conclusion of the District Court that this constituted a *new* agreement under the law of Connecticut.

The decision of the District Court is affirmed.

3. The result reached in the Rhode Island Hospital case is a particularly strong example of Connecticut's insistence that all terms of sale be set forth with painstaking precision. The contract provided that "payments were to be made in 24 monthly installments * * * the first * * * to be paid on July 29, 1949 and the re-

maining installments to be paid on or before the ___ day of each month thereafter." In this case the possible difference as to the time the last payment would be made was 31 days in contrast to the case at bar where the difference is one year.