Isadore TOPPER, Trustee of the Estate
of Muskingum Coal Company, Bank-
rupt, Plaintiff,

v.

JEFFREY MANUFACTURING COM-
PANY, Defendant.

No. 4979.

United States District Court
S. D. Ohio, E. D.

June 10, 1960.

Robert L. Barton, Columbus, Ohio,
Clarence A. Graham, Zanesville, Ohio, for
plaintiff.

Earl F. Morris, John C. Harlor, Colum-
bus, Ohio, for defendant.

WEINMAN, District Judge.

The ultimate question to be decided in
this case is whether each of five condi-
tional sales contracts, filed March 15,
1956, by The Jeffrey Manufacturing
Company for the purpose of retaining
title in machinery sold to The Musking-
um Coal Company, is valid as against
the trustee in bankruptcy.

The trustee in bankruptcy alleges that
the conditional sales contracts in question

are void as they did not comply with Ohio Revised Code § 1319.11,[1] the statute which prescribes the requisites for a valid conditional sales contract filing.

The trustee argues that The Jeffrey Manufacturing Company has failed to comply with Ohio Revised Code § 1319.11 in the following respects: 1) the sworn statements of claim attached to the copies of the conditional sales contracts were not "thereon" as required by § 1319.11, 2) the copies filed March 15, 1956, were not "true copies" of the original contracts as required by § 1319.11; and 3) the filings failed to show the correct amounts of the claims as required by § 1319.11.

The Court will proceed to consider each of these objections to the validity of defendant's filings.

■ 1) The part of the statute which the trustee claims The Jeffrey Manufacturing Company failed to comply with in the first objection is that part which reads:

"* * * a statement thereon, under oath, made by the person so selling, leasing, or delivering the property, his agent or attorney, of the amount of the claim * * *."

Upon the trial of this case, The Jeffrey Manufacturing Company introduced into evidence each of the five conditional sales contracts here in question (defendant's Exhibit A–5 through A–9, inclusive). Each conditional sales contract filing had been held together by three brass staples; the brass staples were removed before trial but both parties agree that each filing had been stapled together in this manner. Was this a compliance with the statute which requires the statement of claim to be "thereon"?

In support of his contention, that the statement of claim was not so securely attached as to be "thereon" the trustee cites Columbus Merchandising Co. v. Kline [2] and In re Chinese Temple Restaurant Co.[3] Columbus Merchandising Co. v. Kline, supra, which involved the chattel mortgage statute, held that the requirements of the statute were not complied with by the filing of an affidavit which was attached to a contract with brass McGill, fasteners. The court stated that if the paper containing the affidavit could be removed without mutilation of the original mortgage, there was a failure to comply with the statute. In re Chinese Temple Restaurant Co., supra, involving a conditional sales contract, it was held that a conditional sales contract was invalid as against the trustee in bankruptcy because the affidavit could be removed without mutilation of the original conditional sales contract as it was fastened thereto only by wire staples.

1. The pertinent provisions of Ohio Revised Code § 1319.11, in effect at the time each of the five conditional sales contracts were filed, and said provisions still being in effect, are as follows:

"When personal property is sold to a person to be paid for in whole or part in installments, or is leased, rented, hired, or delivered to another on condition that it will belong to the person purchasing, leasing, renting, hiring, or receiving it, when the amount paid is a certain sum, or the value of the property, the title to it to remain in the vendor, lessor, renter, hirer, or deliverer thereof, until such sum or the value of the property or any part thereof has been paid, such condition, in regard to the title so remaining until payment, shall be void as to all subsequent purchasers and mortgagees in good faith and for value, and creditors unless the conditions are evidenced by writing, signed by the purchaser, lessee, renter, hirer, or receiver thereof, and also a statement thereon, under oath, made by the person so selling, leasing, or delivering the property, his agent or attorney, of the amount of the claim, or a true copy thereof, with an affidavit that it is a copy, is deposited with the county recorder of the county where the person signing the instrument resides at the time of its execution, if a resident of the state, and if not such resident, then with the recorder of the county in which the property is situated at the time of the execution of the instrument."

2. D.C.S.D.Ohio 1917, 248 F. 296.

3. D.C.N.D.Ohio 1931, 54 F.2d 945.

The Court has carefully considered both of these cases but finds that the trustee has been unable to satisfactorily explain why the case of J. J. Newberry Co. v. Marshall,[4] a case decided by the Sixth Circuit Court of Appeals in 1942, should not be controlling on this point. The Newberry case involved a written lease devising land for twenty years. The lease consisted of separate sheets in a manuscript cover fastened together by staples. The Circuit Court held that since the staples could not be removed without some damage to the instrument, and it was probable that their removal would be very readily detected, there was a substantial compliance with the Ohio statute requiring the acknowledgment to be certified on the same sheet on which the instrument is written or printed.[5] Upon examination of each of the filings in question, this Court finds that each of the five conditional sales contracts is fastened together in such a manner that the brass staples could not be removed without some damage to the instrument and such removal would in probability be readily detected.

This Court is unimpressed as to the argument advanced to the effect that the Newberry case dealt with a lease and the case at bar involves conditional sales contracts. It is the Court's opinion that the rule of law as to whether sheets of paper are sufficiently bound together so as to constitute a unit which could not be separated without some damage to the unit should be the same whether considering leases, chattel mortgages or conditional sales contracts.

■ 2) The trustee's second contention is that The Jeffrey Manufacturing Company failed to comply with Ohio Revised Code § 1319.11 in that the copies filed March 15, 1956, were not "true copies" of the original contracts as required by § 1319.11 because The Jeffrey Manufacturing Company failed to file true copies of the original statements of claim. The trustee argues, and the Court here quotes from his brief:

"It is clear that a proper construction of Section 1319.11 Revised Code means that the 'true copy' required to be filed by the statute means a true copy of the original contract and the original statement of claim, and does not mean a true copy of the contract with a new statement of claim substituted for the original statement of claim required to be included 'thereon' on the original contract. We submit that when the legislature required the filing of a 'true copy', they meant exactly what they said."

Of course, the problem here is exactly what did the legislature mean when it enacted the following language of § 1319.11:

"* * * such condition, in regard to the title so remaining until payment, shall be void as to all subsequent purchasers and mortgagees in good faith and for value, and creditors unless the conditions are evidenced by writing, signed by the purchaser, lessee, renter, hirer, or receiver thereof, and also a statement thereon, under oath, made by the person so selling, leasing, or delivering the property, his agent or attorney, of the amount of the claim, or a true copy thereof, with an affidavit that it is a copy, is deposited with the county recorder * * *."?

This question was answered by the Ohio Court of Appeals in Remington & Son v. The Central Press Association Company,[6] wherein the Appellate Court, reversing the lower court,[7] stated:

"The court below held this statute [Revised Statute § 7913–72, now Ohio Revised Code § 1319.11] to require the seller, in order to preserve

4. 6 Cir., 1942, 125 F.2d 973.

5. The Circuit Court was considering General Code of Ohio § 8510, now Ohio Revised Code § 5301.01.

6. 1897, 7 O.C.D. 540, 13 Ohio Cir.Ct.R. 542.

7. 1896, 4 Ohio Dec. 337.

his title to the property against subsequent purchasers, lienholders or creditors, to deposit with the proper officer, either the original writing evidencing the 'condition' and the original verified statement indorsed upon it, or to deposit a true copy of the original writing, statement and affidavit, verified as such. But the absurd and inconvenient consequences of such a construction raises a doubt that the legislature intended any such requirement. In such cases resort must be had to these rules of construction, and that construction of the statute adopted, as will obviate these consequences.

"Undoubtedly, under the statute, the original 'condition' with a statement of the claim under oath, may be deposited and the rights of the vendor secured; but we are unable to see any reason for the verification of the copy which the court below regarded as indispensable. * * * The general object of the statute is, we think, sufficiently manifest, namely, the prevention of fraud and the protection of creditors and bona fide purchasers of personal property; and by the application of well known rules of construction the enactment can be made clear, reasonable and just, the intention of the general assembly ascertained, and the object of the law effectuated.

"In the construction of a statute like this, courts are authorized, in order to ascertain the intention of the legislature, to transpose the language of the act; and it is their duty, in the interpretation of statutes, unless restrained by the letter, to adopt that view which will avoid absurd consequences, injustice or great inconveniences, as none of these can be presumed to have been within the legislative intent. Moore v. Given, 39 Ohio St. 661."

The Appellate Court stated what language was to be transposed and then continued:

"The provision of the section under consideration as to what shall render such 'condition' void, would then read: 'Such condition in regard to the title so remaining until such payment, shall be void as to all subsequent purchasers and mortgagees in good faith, and creditors, unless such condition shall be evidenced by writing signed by the purchaser, lessor, renter, hirer, or receiver of the same, or a true copy thereof, with an affidavit that the same is a copy, and also a statement thereon under oath, made by the person so selling, leasing or delivering any property, as herein provided, his agent, or attorney, of the amount of the claim, and deposited with the clerk of the township,' etc., thus rendering the statute reasonable and just, and relieving it of the absurd requirement, certainly not intended, that where a copy is filed it must contain a copy of the affidavit attached to the original, with an affidavit that the paper filed is, not only a copy of the condition, but of the affidavit thereto as well.

"What object would there be in requiring an affidavit to be attached to the original, when only a copy of the contract is filed. Who would be benefited or protected, or what possible purpose could be subserved, by appending an affidavit to a paper which is not placed on record or on file in any public office, but is consigned to the oblivion of the creditor's pigeon-holes?"

A reading of this opinion clearly shows the fallacy of the trustee's second contention.

▮ The trustee also argues that one of the filings of March 15, 1956 (defendant's Exhibit A-9) did not contain the drawings or illustrations included in the original contracts. The Court answers this argument by stating that since the description in the filing was sufficiently clear to enable third persons to identify the property, the failure to include the

drawings or illustrations will not void an otherwise valid conditional sales contract filing.[8]

■ 3. The trustee's third contention is that The Jeffrey Manufacturing Company failed to comply with Ohio Revised Code § 1319.11 in that the filings failed to show the correct amounts of the claims and therefore the filings are void.

The following is a table of the amounts actually owing, exclusive of interest, on March 15, 1956 (as stipulated by and between the trustee and The Jeffrey Manufacturing Company); the amounts claimed as being due, exclusive of interest, in the statements of claim filed March 15, 1956, and the difference between these figures.

| Defendant's Exhibit | Amounts Actually Owing on March 15, 1956 | Amounts Claimed in Statement of claim | Difference |
|---|---|---|---|
| A-5 | $179,390.82 | $179,390.82 | ——— |
| A-6 | 22,122.72 | 22,122.72 | ——— |
| A-7 | 84,220.45 | 84,220.45 | ——— |
| A-8 | 75,142.18 | 65,136.14 | −$10,006.04 |
| A-9 | 50,541.15 | 60,547.19 | + 10,006.04 |

The result is that The Jeffrey Manufacturing Company correctly stated the amounts of their claims in three of the filings (A-5, A-6 and A-7), understated the amount due on one conditional sales contract (A-8) and overstated the amount on one of the contracts (A-9).

The trustee argues that the statement of claim on each contract has an amount set forth in cash followed by the statement "plus interest as therein described" and each contract fails to show when the interest started to run. This Court believes that if a statement of claim is correct, the fact that one may not be able to calculate the exact accrued interest should not void an otherwise valid conditional sales contract.[9]

As the Court previously stated, the statements of claim on two of the five conditional sales contracts were incorrect, one being understated; one overstated. What is the effect of such deviations? To determine the effect of such deviations the court has carefully considered various Ohio cases which stated the purpose of Ohio Revised Code § 1319.11 and

the evils which it attempts to prevent. The leading Ohio case is Benedict v. Peters,[10] wherein the Supreme Court of Ohio stated:

" * * * The mischief intended to be remedied by the provisions of section 4154 [now Ohio Revised Code § 1319.11] was the giving of colorable mortgages by debtors for the purpose of covering up their property and hindering and delaying honest creditors in the pursuit of their legal remedies against them. The statement required by this section to be made under oath by the mortgagee on the mortgage, as to the amount of his claim and that it is just and unpaid, is vital to the spirit of the statute in the light of the mischief it was intended to prevent. It subjects the conscience of the party to the severe test of an oath as to the amount and justice of his claim to be secured by the mortgage. It is however argued with a good deal of force, that if the oath has been in fact taken, the mischief

8. In re Chas. M. Ingersoll Co., D.C.N.D. Ohio 1954, 119 F.Supp. 868 and Raeuber v. Central Nat. Bank, D.C.N.D.Ohio 1953, 112 F.Supp. 865.

9. See Arthur v. G. W. Parsons Co., 6 Cir., 1915, 224 F. 47.

10. 1898, 58 Ohio St. 527, 51 N.E. 37, 38.

will be as effectually avoided as if the fact were certified on the mortgage by the officer administering it. This would certainly be so in the cases where it is shown to have been done by parol testimony. But would this be so in all cases? Certainly not in those cases where the oath has not been administered; and as this cannot be known from the mortgage itself, it certainly opens the door to the making and filing of fraudulent mortgages. Such mortgages may be made and filed, and whilst the fraud may or may not be discovered and exposed by the creditors, it will serve for the time being, or maybe for all time, the fraudulent purpose of the parties. In such way the creditor may be hindered and delayed by the fraudulent practice, and no other consequences will result to the parties than the exposure of their fraud, and the loss of what was to be gained thereby."

Since the purpose of the statute is to prevent debtors from overstating their liability to a chattel mortgagee or conditional seller, this Court is unable to see how a creditor could be harmed by a statement of claim which was less than the actual amount owed. The result of the filing of such a statement should be that the debtor is protected only up to the amount claimed in the statement but a court should not void the entire contract for such understatement.

The remaining point is the effect of the overstatement on defendant's Exhibit A-9, the conditional sales contract wherein the amount claimed to be due was $75,142.18 whereas the amount actually due was $65,136.14, resulting in a $10,006.04 overstatement.

The Jeffrey Manufacturing Company argues in brief:

" * * * Let us assume that in preparing the statement of claim an error of 1¢ or $1.00 had been made. If an error of $10,000 could have the effect suggested, so must 1¢ or $1.00 because each alike would render the 'amount of the claim' as stated incorrect. But no court would so hold in the case of the lesser amounts and, therefore, it cannot logically be so held as to the greater amount."

This Court agrees with the argument of counsel for The Jeffrey Manufacturing Company in that no court would hold an error of 1¢ or $1 to void the filing of a $60,000 conditional sales contract. However, the conclusion of counsel, that since 1¢ or $1 should not void such a filing then an error of $10,000 should not logically void the filing, is certainly unwarranted. In the case at hand, 1¢ or $1 is not a substantial overstatement and no creditor could readily be harmed by the "covering up of property" valued at 1¢ or $1. But the overstatement of a claim by $10,000 is a substantial overstatement and for that reason this Court must hold the filing of the conditional sales contract identified as defendant's Exhibit A-8, filed March 15, 1956, to be void as failing to comply with Ohio Revised Code § 1319.11.

If a substantial overstatement of liability would not result in voiding a filing, what would be the purpose of the statute? The fact that the understatement on Exhibit A-9 is equal to the $10,006.04 overstatement does not aid The Jeffrey Manufacturing Company for the reason that each of these contracts is a separate contract.

It is understood by the Court that further briefs were to be filed by the trustee and the defendant on other questions of law should the Court hold any of the five filings to be void.