## ARTHUR v. G. W. PARSONS CO.

(Circuit Court of Appeals, Sixth Circuit. June 30, 1915.)

No. 2747.

1. SALES ⊂⟫465—CONDITIONAL SALES—VALIDITY—FILING OF CONTRACT.

Under Gen. Code Ohio, § 8568, making conditional sale contracts void as to subsequent purchasers and mortgagees in good faith, and creditors, unless the conditions are evidenced by writing, signed by the purchaser, and a verified statement thereon, made by seller of the amount of the claim, deposited with recorder of proper county, the filing of a contract, which contains the conditions as to payment of the price, and that notes have been given therefor, and which gives the amounts of the notes, the periods they are to run, where payable, and rate of interest, is sufficient, though the notes containing the additional provision that, on failure to pay interest at maturity, both principal and unpaid interest shall draw interest at a higher rate, and the additional provision waiving demand of payment, protest; and for payment of attorney's fees and collection expenses, are not filed for record.

[Ed. Note.—For other cases, see Sales, Cent. Dig. § 1353; Dec. Dig. ⊂⟫465.]

⊂⟫For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

2. SALES ☞465—CONDITIONAL SALES—FILING OF CONTRACT.

Where machinery sold under a conditional sale contract was delivered March 10, 1913, and notes for the unpaid price were given on that date, and the contract was filed April 3d, an affidavit indorsed thereon, bearing the same date and stating that the purchasers named "in the within contract are indebted to" the seller in a specified sum, and that the claim is just and unpaid, and that the contract was entered into in good faith, was, sufficient as against the objection that interest had accumulated on' the notes from their date, which fact was not stated, and as against the objection that it did not appear that the specified sum was due on the contract filed.

[Ed. Note.—For other cases, see Sales, Cent. Dig. § 1353; Dec. Dig. ☞465.

What constitutes a contract of conditional sale, see note to Dunlop v. Mercer, 86 C. C. A. 448.]

3. SALES ☞465—CONDITIONAL CONTRACTS—FILING FOR RECORD—RENEWAL NOTES—EFFECT.

The rights preserved to a seller in a conditional sale contract, duly filed under Gen. Code Ohio, § 8568, are unaffected by the fact that the buyer gave renewal notes for the unpaid price, in the absence of any provision in the statute for refiling of contract on giving of renewal notes.

[Ed. Note.—For other cases, see Sales, Cent. Dig. § 1353; Dec. Dig. ☞465.]·

4. STATUTES ☞194—CONSTRUCTION—RULE OF EJUSDEM GENERIS—APPLICABILITY.

The rule of ejusdem generis is invoked merely as an aid to the ascertainment of legislative intent in construing a statute.

[Ed. Note.—For other cases, see Statutes, Cent. Dig. § 272; Dec. Dig. ☞194.]

5. STATUTES ☞188—CONSTRUCTION—MEANING OF WORDS.

Statutes, must, where possible, be construed according to the natural and usual acceptation of terms therein, and where a word has acquired a common and popular meaning, such meaning is prima facie the meaning intended. '

[Ed. Note.—For other cases, see Statutes, Cent. Dig. §§ 266, 267, 276; Dec. Dig. ☞188.]

6. SALES ☞479—CONDITIONAL SALES—STATUTES—CONSTRUCTION—"CONTRACTOR."

A corporation constructing a water-belt line for a city is a contractor within Gen. Code Ohio, § 8570, providing that a seller in a conditional contract may not retake possession without tendering the money paid on the price, if in excess of 25 per cent., after deducting a reasonable compensation for the use of the property not to exceed 50 per cent., but declaring that this provision shall not apply to machinery, equipment, and supplies for railroads and contractors, for manufacturing brick, cement, and, tiling, and for quarrying and mining purposes, for a contractor is one who contracts with another to furnish supplies, or to construct works or erect buildings, or to perform any work or service at a fixed price or rate, and a seller need not tender the price paid to recover machinery used by a contractor in performing the work, and held by it under a conditional sale contract (citing Words and Phrases, Contractor).

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 1418–1432, 1434–1438; Dec. Dig. ☞479.]

7. SALES ☞479—CONDITIONAL SALES—STATUTE — CONSTRUCTION—"MACHINERY."

A trench-excavating machine and appurtenances used by a contractor to construct a water-belt line for a city are within the general class of "ma-

chinery" within Gen. Code Ohio, § 8570, providing that the section shall not apply to machinery for contractors.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 1418–1432, 1434–1438; Dec. Dig. ☞479.

For other definitions, see Words and Phrases, First and Second Series, Machinery.]

Appeal from the District Court of the United States for the Southern District of Ohio; Howard C. Hollister, Judge.

Petition by the G. W. Parsons Company against Edwin L. Arthur, trustee in bankruptcy of Fidler & Brock, bankrupts. There was an order granting the relief prayed for in the petition, and the trustee in bankruptcy appeals. Affirmed.

W. W. Keifer, of Springfield, Ohio, for appellant.

P. C. Martin, of Springfield, Ohio, for appellee.

Before KNAPPEN and DENISON, Circuit Judges, and SESSIONS, District Judge.

KNAPPEN, Circuit Judge. Appellee filed in the bankruptcy court an intervening petition, asking that it be allowed to repossess itself of a certain traction trench-excavating machine, with its boiler, engines, and other appurtenances, then in possession of the court through its trustee in bankruptcy. The property had been sold by appellee to the bankrupts by a conditional contract in writing, whereby the title remained in the seller (appellee) until the purchase price ($6,000) and the promissory notes given therefor should be fully paid. Two thousand dollars had been paid upon the purchase price; the remaining $4,000 was past due and unpaid. The referee ordered the surrender of the property to appellee. Upon review, the district court affirmed the action of the referee, upon condition of the surrender to the trustee of the unpaid purchase-money notes. Reversal is asked upon four grounds.

[1] 1. By section 8568 of the General Code of Ohio conditional sales of personal property, whereby the title remains in the seller until the purchase price is paid, are declared void as to all subsequent purchasers and mortgagees in good faith, and creditors, unless—

"the conditions are evidenced by writing, signed by the purchaser, * * * and also a statement thereon, under oath, made by the person so selling, * * * of the amount of the claim, * * * be deposited with" the recorder of the proper county.

The contract was in writing and was duly recorded. It contained all the conditions regarding payment of purchase price, including the fact that promissory notes were to be given therefor, the amounts of the respective notes, the periods they were to run, where payable, and that they drew "interest from date at the rate of six per cent. per annum." The notes themselves were not recorded. They contained the additional provision whereby failure to pay interest when due precipitated the maturity of the entire note, both principal and interest, the entire amount to draw interest thereafter at 8 per cent., payable semiannually, with provision waiving demand of payment,

protest, etc., and for payment of attorney's fees and collection expenses.

It is urged that all the conditions of the sale contract were thus not filed, and that the contract is therefore void as against the trustee in bankruptcy. We cannot agree with this contention. The purpose of the statute regarding record was to protect third parties dealing with the property by imparting notice to them of the condition of its title. Burbank v. Conrad, 96 U. S. 291, 292, 24 L. Ed. 731; Register Co. v. Lesko, 77 Conn. 276, 280, 58 Atl. 967. The contract itself gave complete information of the payments necessary to be made to vest title in the purchaser. It omitted only certain results following a default. As was well said by the referee:

"If the vendee had complied with all the terms of the conditional contract as filed, the title to the machine would have passed, and there is nothing in the notes that would have imposed any additional obligation. * * * The notes * * * merely imposed penalties on a failure to fulfill the conditions. At the time the contract was filed none of these penalties had attached, and the only conditions the vendee had to meet in order to acquire full title were those set out in the contract as filed."

We agree with the referee's conclusion that recording of the notes was unnecessary. This conclusion is sustained by Cable Co. v. Stewart (C. C. A. 5) 191 Fed. 699, 702, 112 C. C. A. 289.

[2] 2. The machine was delivered March 10, 1913, and notes were given on that date (as required by the contract), and bore interest therefrom. The contract itself was filed April 3, 1913. The affidavit which was indorsed thereon bore the same date, and stated that the partnership purchasers—

"all of which are named in the within contract, are indebted to said the G. W. Parsons Company in the sum of $5,000, and that said claim is just and unpaid, and that the foregoing and within contract was entered into in good faith."

It is urged that this affidavit was insufficient: First, because untrue, in that interest had accumulated upon the notes from their date, and that fact was not stated; and, second, that it does not appear that the $5,000 referred to was due "upon the contract then filed." It is not clear that these objections to the affidavit have been saved; but, assuming that they are properly here, we have no hesitation in saying that we see no merit in them. The criticism respecting the nonmention of accrued interest impresses us as too refined. The authorities cited in support of the other objection to the affidavit are not, in our opinion, in point. The affidavit lacks, at most, only the word "thereon" following "indebted"; but we think the only natural inference from the reference to the contract, both preceding and following the statement of indebtedness, is that the indebtedness referred to is under that contract.

[3] 3. The two notes for $2,000 each, representing the last two payments upon the contract, fell due, respectively on July 24, 1913, and September 24, 1913. The one first maturing "was renewed by new note for like amount, to become due September 24, 1913." The other note, maturing on the date last named, "was added to the last

above-mentioned renewal note, and on September 29, 1913, both notes renewed by a new note for $4,000 to become due December 1, 1913." This last renewal note was on December 15, 1913, renewed by eight notes for $500 each, which matured, respectively, on the 12th day of each of the following eight months. It is contended that thereby "the contract of conditional sale was changed by the parties after the filing," and thus appellee's priority over general creditors lost.

The statute, however, makes no provision for a refiling of the contract, and in the absence of such provision we cannot believe that it was the intention of the Legislature to accomplish a result so inequitable as the loss of the vendor's lien or title through the mere renewal (in accordance with what the Legislature must have known was not uncommon practice) of unpaid promissory notes given for purchase price. Had the Legislature intended such result, the natural evidence of such intention would be the requiring of record of a new notice of every change in the amount or form of indebtedness subsequent to the original filing of the contract.

[4-6] 4. Section 8570 of the Ohio Code provides generally that the seller under a conditional contract may not retake possession without tendering or refunding the money paid on the purchase price (if in excess of 25 per cent. of the contract price), after deducting a reasonable compensation for the use of the property, not to exceed 50 per cent. of the amount paid thereon, "unless such property has been broken, or actually damaged, when a reasonable compensation" therefor shall be allowed. The section, however, expressly excepts from its operation "machinery, equipment and supplies for railroads and contractors, for manufacturing brick, cement and tiling, and for quarrying and mining purposes." As already said, $2,000 had been paid on the purchase price, the amount was not refunded or tendered, and the trustee asks that if the conditional sale be held valid, appellee be required to repay at least $1,000, as 50 per cent. of the amount paid. Unless bankrupts are within the exception mentioned, a refund should be made. Register Co. v. Cervone, 76 Ohio St. 12, 80 N. E. 1033.

Assuming that the allegation in the petition that the entire sum paid "is not sufficient to cover a reasonable compensation for the use of said trench machine, and the damage to same by breakage and use" is not covered by the admission in the answer of the allegations of the first four paragraphs of the petition, the only question is one of law, viz., whether bankrupts are "contractors" within the meaning of the section. Appellant contends, in effect, that under the rule of ejusdem generis the term "contractors" must be limited to "railroad contractors." But the rule invoked, like other rules of construction, is merely an aid to the ascertainment of legislative intent. It is also a rule of interpretation that statutes are to be construed, where possible, according to the natural and usual acceptation of terms, and that where a word has acquired a common and popular meaning, such meaning is prima facie within the legislative mind.

The word "contractor" has acquired a specific meaning as applied to a business. It is defined, according to the Century Dictionary:

"Specifically—(2) One who contracts or covenants, whether with a government or other public body or with private parties, to furnish supplies, or to construct works or erect buildings, or to perform any work or service, at a certain price or rate: as, a paving contractor; a labor contractor."

As expressed in Webster's International Dictionary:

"Specifically, one who contracts to perform work, or supply articles on a large scale, at a certain price or rate, as in building houses or provisioning troops."

See to the same general effect 2 Words and Phrases, p. 1535; Brown v. Trust Co., 174 Pa. 443, 462, 34 Atl. 335; Ex parte Unger, 22 Okl. 755, 98 Pac. 999, 1000, 132 Am. St. Rep. 670.

That bankrupts were contractors engaged in construction work is apparent. The machine was for trench excavating. In the agreed statement of facts it is said that, at the time of the execution of the eight promissory notes above referred to:

"Bankrupts were engaged in the construction of a water-belt line for the city of Springfield, Ohio, in which work said machine was used, and payments were made to said bankrupts by said city on monthly estimates."

In Potter v. Arthur, Trustee, 220 Fed. 843, 136 C. C. A. 589 (decided by this court March 2, 1915), which likewise involved the purchase from another seller of a trench-excavating machine, the same bankrupts were spoken of as "contractors * * * engaged in construction work at Troy, Ohio." The referee, who presumably was informed of the facts, states:

"There can be no doubt that the bankrupts were engaged in a business that falls within the ordinary meaning of the word [contractors]."

[7] We are impressed with the thought that the reason for the statutory exemption from liability to refund purchase price was not improbably that machinery used in railroad construction, in contracts for constructing works and erecting buildings on a large scale, the manufacture of brick, tile, and cement, and in mining and quarrying, is devoted to rough work—that engaged in out-of-door work, exposed to the elements—and so subject to rapid deterioration. Trench-excavating machines belong to this general class of machinery, and, indeed, seem as equally applicable to railroad construction as to sewer and waterworks trenches. In that sense machinery of this class is of the same general class as railroad machinery; and, without finding it necessary to define the limitations upon the general term "contractor," we think it clear that the exemption should be construed as extending to the machinery in question as used in the bankrupt's business.

We find no error in the record, and the order appealed from is accordingly affirmed with costs.