### In the Matter of AMITY DYEING & FIN-ISHING COMPANY INC., Bankrupt.

United States District Court
S. D. New York.
Jan. 12, 1962.

Samuel Newfield, New York City, for P. R. Sales Co., reclaimants, Leopold Frankel, Paterson, N. J., of counsel.

David Haar, New York City, for trustee.

FREDERICK van PELT BRYAN, District Judge.

This is a petition to review a decision and order of the referee in bankruptcy which, in substance, denied the right of conditional vendors to reclaim machinery in the possession of the trustee which had been sold to the bankrupt under two conditional sales contracts. On July 29, 1960 the referee rendered a decision holding that the conditional sales contracts under which the machinery had been sold to the bankrupt were void as against the trustee and denying the vendors' application to reclaim the property. The reclaimants had been permitted to sell the machinery for the sum of $7,000

by leave of the court upon condition they hold the proceeds subject to court order. On September 15, 1960 the referee ordered the reclaimants to pay the proceeds of the sale to the estate. The reclaimants-petitioners for review assert that the decision and order of the referee were erroneous.

The reclaimants are a partnership doing business as P. R. Sales Company (P. R.) with their principal office in Passaic, New Jersey. They are engaged in the sale of machinery and equipment to the textile trade. The bankrupt, Amity Dyeing & Finishing Company, Inc., is a New York corporation which was engaged in finishing and dyeing textiles. Its certificate of incorporation provides that its principal place of business is in Queens County. On January 28, 1960 it was adjudicated a bankrupt in this court on a voluntary petition.

There are two conditional sales contracts involved in the present controversy. On July 25, 1957 P. R. and Amity entered into a contract for the sale of a Werner Rebeamer and appurtenances for the price of $4,600. The terms as set forth in the contract were $500 in cash on the execution of the contract, $500 on delivery of the machinery, and 18 promissory notes in the sum of $200 each, plus interest, payable monthly commencing one month from the date of delivery. At that time Amity had its plant and principal place of business in Glendale, Queens County, New York. The machinery was delivered to Amity there on or about August 15, 1957. It is conceded that the conditional sales contract was properly filed in Queens County on that day.

On February 6, 1958 P. R. and Amity entered into a second conditional sales contract for two Standard Boil-Off machines at a price of $14,000. The terms, as set forth in the contract, were $500 upon the signing of the contract and 27 promissory notes of $500 each, plus interest, payable monthly commencing May 1, 1958. The machinery was delivered to Amity at its plant in Glendale on February 15, 1958 and the conditional sales contract was properly filed in Queens County on that day.

Both conditional sales contracts required Amity to keep the machinery at its Glendale plant and not to remove it without the consent of the vendors first obtained.

In June or July of 1959 Amity, with the permission of P. R., moved all of its property and equipment, including the machinery involved here, from Glendale, Queens, to a new plant in Norwich, Connecticut, where it continued to operate. On June 26, 1959 P. R. filed the original two conditional sales contracts covering the rebeamer and the boil-off machines respectively with the Town Clerk of Norwich, under the Connecticut conditional sales statute.[1]

In August of 1959 Amity found itself in financial difficulties and, after negotiations, reached an agreement with P. R. under which P. R. returned all unpaid notes it held pursuant to both contracts and Amity gave it a new series of notes dated August 1, 1959. The new notes covered the combined balance remaining due for the machinery sold under both contracts and each note was payable in monthly instalments equal to one-half of the combined amount due monthly under the old notes, plus interest. The final note of this series was due on July 1, 1961, whereas the final note on the 1957 conditional sales contract covering

1. Conn.Gen.Stat. § 42–77 (1958): "Except as otherwise provided in this chapter, all contracts for the sale of personal property, conditioned that the title thereto shall remain in the vendor after delivery, shall be in writing, describing the property and all conditions of such sale, and shall be acknowledged before some competent authority and filed within a reasonable time in the town clerk's office in the town where the vendee resides; * * *."

This section has been repealed effective October 10, 1960, at which time the enactment of the Uniform Commercial Code becomes effective in Connecticut. The new filing requirements of Section 42a–9–401 have no effect upon the matter at bar.

the rebeamer had been due in February 1959 and the final note on the boil-off machine had been due in July 1960.

With the exception of the new notes evidencing the transaction this agreement was not reduced to writing nor did P. R. file it or any notice thereof either in Norwich, Connecticut, where Amity was then carrying on its business and where the machinery was then located, or in Queens County, New York, the principal place of business specified in Amity's charter, where Amity's plant had been previously located and where the machinery had been delivered.

When the adjudication took place on November 5, 1959 the total amount, exclusive of interest, still unpaid under the new arrangement was $9,936.50. The trustee took possession of the machinery at the bankrupt's plant in Norwich. There followed the proceedings before the referee which led to the decision and order under review. P. R. has paid to the estate the sum of $7,000 representing the machinery which it sold under leave of the court. It urges that it is entitled to repayment of this sum upon the theory that it had title to both machines under the two conditional sales contracts which was good as against the trustee and that it was therefore entitled to the proceeds of the sale of the property.

In substance, the referee held:

1. That the residence of Amity was in Queens County, New York, since it was a New York corporation whose certificate of incorporation specified Queens County as its principal place of business.

2. That the arrangements between P. R. and Amity made in August 1959 resulted in a new agreement with relation to the property covered by the original conditional sales contracts.

3. That the new agreement was an addition to the original sales contracts "so as to include other * * * transactions between the same parties" under § 66–a of the New York Personal Property Law, McKinney's Consol.Laws, c. 41, requiring the making and filing of a new conditional sales contract.

4. That the failure to file such a new contract in Queens County, where Amity resided, as required by § 66–a of the New York Personal Property Law, rendered the vendors' reservation of title in the machinery void as against the trustee under § 65 thereof. The referee did not discuss the effect of the removal of the property to Connecticut with the permission of the vendors and the filing of the original 1957 and 1958 conditional sales contracts there.

■ The reclaimants contend that the referee erred in holding that the New York Personal Property Law governed and urge that Connecticut and not New York law should apply. They assert that by filing the original conditional sales contracts in Connecticut they fully complied with the requirements of Connecticut law and therefore their reservation of title to the property is good as against the trustee.

They further urge that in any event the referee was in error in holding that the arrangements with Amity made in August 1959 were an addition to the original conditional sales contracts so as to include other transactions between the parties which required the making and filing of a new contract under § 66–a of the New York Personal Property Law. Thus, say the reclaimants, even if the New York Personal Property Law did apply their reservation of title under the original conditional sales contracts must be held to be good.

The referee was quite correct in holding that the arrangements between P. R. and Amity in August 1959 constituted a new agreement with respect to the subject matter of the two previous conditional sales. Some of the outstanding notes payable at $200 per month on the purchase price of the rebeamer were then already in default and the time when the final payment for the rebeamer was to be made had already passed. These notes and the notes of $500 per month on the two boil-off machines were returned to the vendors and extinguished. The new notes in substantially lesser amounts extended the time for

payment by more than two years in the case of the rebeamer and one year in the case of the boil-off machines. In effect P. R. attempted to reserve title to the machines for those extended periods when, in fact, under the contracts which had been filed title would have passed to the purchaser long before. The new notes covered both the rebeamer and the two boil-off machines. This was an entirely new conditional sales agreement with quite different terms and conditions from those of either of the two previously filed in Queens County and Norwich, Connecticut.

In this posture of the case it makes no difference in result whether New York law applies, as the referee held, or Connecticut law applies, as the reclaimants contend. In either event, the new agreement was required to be in writing and to be filed in order to protect the vendors' title against one in the position of the trustee. The new agreement was only partially reduced to writing and neither the text of the agreement nor any notice of it were filed anywhere.

Assuming New York law applies, the transaction is governed by §§ 65 and 66-a of the New York Personal Property Law.[2] At the very least this was an agreement coming within the purview of § 66-a. It is certainly an "addition" to the original conditional sales contracts so as to include "other purchases or transactions between the same parties." Thus, under § 66-a it was required that "a new contract must be made and filed."

■ This is quite apart from the question as to whether the new agreement was required to be filed as an original conditional sales contract under § 65. In New York, in accordance with the view generally held, the statutes relating to the filing of conditional sales contracts are for the benefit of creditors and bona fide purchasers and are construed strictly against the parties to the contract, and with liberality as to those for whose protection the statutes were enacted. See, e. g., Matter of Morasco, 233 F.2d 11 (2 Cir. 1956); In re Lohr, 113 F.Supp. 822 (E.D.N.Y.1953); In re Riverdale Production, 107 F.Supp. 87 (S.D.N.Y.1952); Industrial Bank of Commerce v. Packard Yonkers Corp., 279 A.D. 125, 108 N.Y.S.2d 249, (N.Y. 1st Dept. 1951), aff'd 304 N.Y. 622, 107 N.E.2d 96; Manekas v. Allied Discount Co., 6 Misc.2d 1079, 166 N.Y.S.2d 366 (N.Y.Sup.Ct.Kings 1957). Applying these rules of construction I am inclined to the view that even in the absence of § 66-a filing would have been required under § 65.

■ If Connecticut law applies the new agreement was required to be filed under § 42-77 of the General Statutes of Connecticut. (Revision of 1958.) Under § 42-79 all contracts of conditional sale not made and filed in compliance with the provisions of § 42-77 are void as against creditors or bona fide purchasers. The contract must be in writing "describing the property and *all* conditions of such sale" and must be "filed within a reasonable time in the town clerk's office in the town where the vendee resides." [Emphasis added.] In Connecticut, as in New York, the filing statutes are strictly construed against the vendor and vendee and liberally construed in favor of creditors and purchasers. Rigid compliance with the statute is required. It has been repeatedly held in Connecticut that the failure to

2. § 65. "Conditional sales void as to certain persons
  "Every provision in a conditional sale reserving property in the seller shall be void as to any purchaser from or creditor of the buyer, who, without notice of such provision, purchases the goods or acquires by attachment or levy a lien upon them, before the contract or copy thereof shall be filed as hereinafter provided, unless such contract or copy is so filed

within ten days after the making of the conditional sale. This section shall not apply to conditional sales of goods for resale."
  § 66-a. "Additions to conditional sales contract
  "No conditional sales contract once filed can have any additions made to it so as to include other purchases or transactions between the same parties. A new contract must be made and filed."

include any term or condition of the conditional sales contract is fatal to the vendor's title as against the vendee's creditors. See Rhode Island Hospital National Bank v. Larson, 137 Conn. 541, 79 A.2d 182 (1951); Standard Acceptance Corp. v. Connoer, 127 Conn. 199, 15 A.2d 314, 130 A.L.R. 720 (1940); General Motors Acceptance Corp. v. Cirone, 146 Conn. 64, 147 A.2d 481 (1958). See, also, Maguire v. Gorbaty Bros., 133 F.2d 675 (2 Cir. 1943). Cf. Cummings-Landau Laundry Machinery Co. v. Alderman, 212 F.2d 342 (2 Cir. 1954).

While the precise issue presented here does not appear to have been passed upon by the Connecticut Supreme Court, there is no doubt in my mind as to how it would be resolved were that court called upon to pass on it. Any other result other than a holding that filing was required would emasculate the purposes of the filing statute and would remove the protections which it sought to confer upon creditors and bona fide purchasers of the vendee.

The reclaimants cite General Motors Acceptance Corp. v. Golden, 11 Conn.Sup. 277 (1942), a memorandum decision of the Court of Common Pleas of Fairfield County, for the proposition that the new agreement of August 1959 was not required to be filed under the Connecticut statute. That case involved a simple agreement to extend the time of payment on the conditional sale of an automobile and is distinguishable on its facts. But apart from this it was never reviewed on appeal, and in my view runs contrary to the whole tenor of the decisions of the highest court of Connecticut on this subject, and, indeed, of decisions of the Court of Appeals of this circuit dealing with the Connecticut statute. See Cummings-Landau Laundry Machinery Co. v. Alderman, supra; In re Curb Service Laundry & Dry Cleaning, Inc., 145 F.2d 756 (2 Cir. 1944).

One further point might be briefly mentioned. It is said that since the Connecticut statute requires filing "in the town where the vendee resides", and since Amity is a New York corporation

with its principal place of business in Glendale, Queens County, New York, it cannot be said to reside in Norwich, Connecticut, and therefore filing is not required there.

The referee held that the residence of Amity was Queens County, specified as its principal place of business in its charter, and that the corporate residence could not be changed without a change of the charter, citing In re Riverdale Productions, Inc., supra, and In re Norma Footwear Corp., 2 App.Div.2d 24, 153 N.Y.S.2d 80, aff'd 2 N.Y.2d 887, 161 N.Y.S.2d 143.

This is not free from doubt. See Restatement, Conflicts § 41 (1934). But even if Amity did not become a resident of Norwich, within the meaning of the Connecticut filing statute, by transferring its entire property, business and seat of operations to that town and remained a resident of Queens County, that would not help reclaimants here. For in such event P. R. would be required under the Connecticut statute to file in the town of its residence, which would be in Queens County, New York, and it filed nowhere.

I do not reach the question raised by the reclaimants of whether or not the referee was correct in applying the law of New York, where Amity was incorporated and had its principal place of business, the property was originally delivered, and the initial contracts were filed, rather than the law of Connecticut, where the property was situated at the time the trustee took possession. While it may be noted that the Connecticut view, and, indeed, the view generally prevailing, is that the law of the situs of personal property governs (See, e. g., United Construction Co. v. Milam, 124 F.2d 670 (6 Cir. 1942), cert. den. 317 U.S. 642, 63 S.Ct. 33, 87 L.Ed. 517; Robbins v. Bostian, 138 F.2d 622 (8 Cir. 1943); In re Burton, 120 F.Supp. 148 (D.Md.1954); Beggs v. Bartels, 73 Conn. 132, 46 A. 874 (1900); H. G. Craig & Co. v. Uncas Paper Board Co., 104 Conn. 559, 133 A. 673 (1926); II Beale, Conflict of Laws, §§ 272.5–276.1

(1935); 4 Collier, Bankruptcy 1122 (14 ed. 1942); 2 Williston, Sales, § 339 (rev. ed. 1948). But, see, e. g., Cook and Sons v. Killen, 277 F.2d 607 (9 Cir. 1960); Goodrich, Conflict of Laws, § 157 (3 ed. 1949)) it is unnecessary to pass on that question here. The failure of the vendors to file the new August 1959 agreement anywhere necessarily renders such title as it may have had void as against the trustee and it is not entitled to reclaim the machinery in his possession.

The reclaimant's petition to review is in all respects denied and the orders of the referee are affirmed.

It is so ordered.